898 F.2d 852
 58 USLW 2551
 Roland PINSKY, Jennie Pinsky, Eileen Fedowitz and Brian K.
Doehr, Plaintiffs-Appellants,
v.
Richard K. DUNCAN, Joseph Golden Insurance Agency, Inc. and
John F. Di Giovanni, Defendants,
Richard K. Duncan and John F. Di Giovanni, Defendants-Appellees,
State of Connecticut, Intervenor.
 No. 201, Docket No. 89-7521.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 5, 1989.
Decided March 9, 1990.
Rehearing granted in part, denied in part and opinion
amended, April 25, 1990.
 
 Joanne S. Faulkner, New Haven, Conn., for plaintiff-appellant Brian K. Doehr.
 Andrew M. Calamari, Bronx, N.Y. (Calamari & Calamari, of counsel), for defendant-appellee John F. Di Giovanni.
 Henry S. Cohn, Hartford, Conn., Asst. Atty. Gen. of the State of Conn. (Clarine Nardi Riddle, Atty. Gen. of the State of Conn., of counsel), for intervenor.
 Before NEWMAN, PRATT, and MAHONEY, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 In this appeal we consider the constitutionality of a statute that authorizes prejudgment attachment of real estate without prior notice and opportunity for a hearing, and without requiring the person obtaining the attachment to post a bond. Conn.Gen.Stat. Sec. 52-278e(a)(1). Brian K. Doehr, a Connecticut landowner whose property was attached under this statute, appeals from a summary judgment of the United States District Court for the District of Connecticut, Warren W. Eginton, Judge, reported at 716 F.Supp. 58. Doehr claims that Sec. 52-278e(a)(1) is unconstitutional on its face. For the reasons below, we agree. We therefore reverse and remand for entry of judgment in favor of Doehr.
 
 BACKGROUND
 
 2
 Attachment is an extraordinary prejudgment remedy that enables a plaintiff to secure a contingent lien on defendant's property at the inception of a lawsuit. It has traditionally served the dual purposes of compelling the appearance of a defendant who cannot otherwise be haled into court, and providing security for any judgment that plaintiff might ultimately recover. See 7 C.J.S. Attachment Sec. 4 (1980).
 
 
 3
 Under Connecticut law, a prejudgment attachment may sometimes be obtained after notice to defendant and a hearing, Conn.Gen.Stat. Secs. 52-278c, 52-278d, or, in some cases, even without notice and a hearing. Sec. 52-278e. In neither case is the plaintiff required to post a bond or other security for the payment of damages the defendant may sustain either if the attachment is wrongfully issued or the plaintiff's claim ultimately proves to be meritless. The portion of the statute governing the ex parte attachment of real estate provides in relevant part:
 
 
 4
 The court or a judge of the court may allow the prejudgment remedy to be issued by an attorney without hearing as provided in sections 52-278c and 52-278d upon verification by oath of the plaintiff or of some competent affiant, that there is probable cause to sustain the validity of the plaintiff's claim and (1) that the prejudgment remedy requested is for an attachment of real property * * *.
 
 
 5
 In March 1988, John F. Di Giovanni commenced an action for assault and battery against Doehr in Connecticut Superior Court. At the inception of this lawsuit, and before any process had been served on Doehr, Di Giovanni applied for an attachment on Doehr's property in Meriden, Connecticut. As required by the statute, Di Giovanni submitted an affidavit in support of his application, in which he stated that "I was willfully, wantonly and maliciously assaulted by the defendant, Brian K. Doehr. * * * Said assault and battery broke my left wrist and further caused an ecchymosis to my right eye, as well as other injuries to my head, limbs and body. * * * In my opinion, the foregoing facts are sufficient to show that there is probable cause that judgment will be rendered for the plaintiff." Based on these submissions, the state court authorized an attachment on Doehr's home to the value of $75,000.
 
 
 6
 Rather than moving to dissolve the attachment, as he was entitled to do under the statute, Sec. 52-278e(c), Doehr filed the present action in federal district court, alleging that Connecticut's ex parte attachment procedure violated his constitutional right to due process. On Di Giovanni's motion for summary judgment, the district court held that Sec. 52-278e is constitutional because "it requires the prejudgment remedy to be issued by a judge", " 'can be invoked only by a verified affidavit that contains factual, rather than merely conclusory, supporting allegations' ", quoting Fermont Div., Dynamics Corp. of America v. Smith, 178 Conn. 393, 397, 423 A.2d 80 (1979), and provides for a "prompt post-seizure hearing" at which the property owner may challenge the attachment. 716 F.Supp. at 60. Doehr now appeals that ruling.
 
 
 7
 Since the constitutionality of a state statute "affecting the public interest is drawn in question" by this lawsuit, the district court was required to "certify such fact to the attorney general of the State" for the purpose of allowing the state to intervene on the constitutional issue. 28 U.S.C. Sec. 2403(b). Although the district court failed to follow this procedure, we invited the state to file an intervenor's brief in this appeal, consistent with our resolution of a similar problem in Merrill v. Town of Addison, 63 F.2d 80, 82-83 (2d Cir.1985). The state elected to intervene, and we give careful consideration to its arguments in this decision.
 
 DISCUSSION
 
 8
 A. Deprivation of a Protected Property Interest?
 
 
 9
 As a threshold matter, we must determine whether the "seizure" at issue in this case--a nonpossessory attachment of real estate--deprives the owner of a significant property interest within the meaning of the fourteenth amendment. Di Giovanni argues that our decision on this point is controlled by the Supreme Court's summary affirmance of Spielman-Fond, Inc. v. Hanson's, Inc., 379 F.Supp. 997 (D.Ariz.1973) (three-judge court) (per curiam), which held that "the filing of mechanic's and materialmen's lien does not amount to a taking of a significant property interest". Id. at 999, aff'd mem., 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). However, notwithstanding the limited precedential value of a summary affirmance, see, e.g., Tulley v. Griffin, Inc., 429 U.S. 68, 74, 97 S.Ct. 219, 223, 50 L.Ed.2d 227 (1976), we note that the mechanic's lien statute upheld in Spielman-Fond required the creditor to have a pre-existing right to the property, whereas Connecticut's attachment procedure is available in a variety of contexts, including the present case, to individuals having no preexisting interest in the property to be attached.
 
 
 10
 Moreover, although an attachment of real estate does not deprive the landowner of the use and possession of his property, and thus does not amount to a "seizure" in the literal sense, it nevertheless has a significant impact on the owner's ability to exercise the full scope of his property rights. An attachment not only impairs the marketability of the real estate, but also may harm the owner's credit rating, and may prevent him from using the property as collateral for a loan. Even if short-lived, these effects are certainly worthy of due process protection. See Fuentes v. Shevin, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972) ("The Fourteenth Amendment draws no bright lines around three-day, 10-day, or 50-day deprivations of property"). Consequently, we hold that a nonpossessory attachment of real estate deprives the owner of a constitutionally protected property interest under the fourteenth amendment. Accord Shaumyan v. O'Neill, 716 F.Supp. 65, 77-79 (D.Conn.1989); MPI v. McCullough, 463 F.Supp. 887, 901 (N.D.Miss.1978); Terranova v. AVCO Financial Servs., 396 F.Supp. 1402, 1406-07 (D.Vt.1975) (three-judge court); Hutchison v. Bank of N.C., 392 F.Supp. 888, 894 (M.D.N.C.1975) (three-judge court); Bay State Harness Horse Racing & Breeding Assn. v. PPG Indus., Inc., 365 F.Supp. 1299, 1304-06 (D.Mass.1973) (three-judge court); Gunter v. Merchants Warren Nat'l Bank, 360 F.Supp. 1085, 1090 (D.Me.1973) (three-judge court); Clement v. Four N. State St. Corp., 360 F.Supp. 933, 935 (D.N.H.1973) (three-judge court).
 
 
 11
 B. Ex Parte Attachment.
 
 
 12
 Doehr argues that Sec. 52-278e(a)(1) is invalid, first, because it dispenses with prior notice and opportunity for a hearing even in the absence of exigent circumstances. A "root requirement" of due process is the right to a hearing before being deprived of a significant property interest unless the state demonstrates "some valid governmental interest * * * that justifies postponing the hearing until after the event." Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (footnote omitted); see also United States v. Premises & Real Property at 4492 S. Livonia Rd., 889 F.2d 1258, 1263 (2d Cir.1989). Thus, in Sniadach v. Family Finance Corp., 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969), the Court emphasized that state garnishment procedures must ordinarily provide for a pre-deprivation hearing except in situations "requiring special protection to a state or creditor interest". In Fuentes the Court made it clear that the type of "extraordinary circumstances" that warrant postponing the hearing "must be truly unusual", such as the need "to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, [or] to protect the public from misbranded drugs and contaminated food." 407 U.S. at 90-92, 92 S.Ct. at 1999-2000 (citations omitted).
 
 
 13
 Although the Court later upheld a Louisiana sequestration statute that authorized the seizure of personal property without notice and opportunity for a hearing, see Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the application of that statute was explicitly limited to unusual situations where "it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action." Id. at 605, 94 S.Ct. at 1899. Because the creditor in Mitchell claimed a preexisting right to consumer goods held by the debtor, and because the creditor's lien would expire under Louisiana law the moment the debtor transferred possession, any prior notice would enable the debtor to transfer the goods before the hearing and thereby defraud the creditor. Thus there was a compelling reason to postpone notice and hearing until after the sequestration had initially taken effect. As the Court put it, "there is a real risk that the buyer, with possession and power over the goods, will conceal or transfer the merchandise to the damage of the seller. This is one of the considerations weighed in the balance by the Louisiana law in permitting initial sequestration of the property. * * * [N]otice itself may furnish a warning to the debtor acting in bad faith." Id. at 609, 94 S.Ct. at 1901.
 
 
 14
 The rule to be derived from Sniadach and its progeny, therefore, is not that post-attachment hearings are generally acceptable provided that plaintiff files a factual affidavit and that a judicial officer supervises the process, but that a prior hearing may be postponed where exceptional circumstances justify such a delay, and where sufficient additional safeguards are present. See Terranova, 396 F.Supp. at 1407 ("The Supreme Court decisions in [North Georgia Finishing, Mitchell, Fuentes, and Sniadach ] dictate that except in extraordinary situations the prejudgment attachment of real estate belonging to an in-state resident may be effected only after notice to the owner and a hearing") (emphasis added) (footnotes omitted). The only decision in the Sniadach line of cases to find a post-deprivation hearing constitutionally acceptable, Mitchell, carefully limited the reach of its holding to the particular circumstances of the case:
 
 
 15
 Plainly enough, this is not a case where the property sequestered by the court is exclusively the property of the defendant debtor. The question is not whether a debtor's property may be seized by his creditors, pendente lite, where they hold no present interest in the property sought to be seized.
 
 
 16
 416 U.S. at 604, 94 S.Ct. at 1898 (emphasis added); see also North Georgia Finishing, Inc. v. Di-Chem, 419 U.S. 601, 609, 95 S.Ct. 719, 723, 42 L.Ed.2d 751 (1975) (Powell, J., concurring) (suggesting that Mitchell has been relegated "to its narrow factual setting").
 
 
 17
 In sharp contrast to Mitchell, the case before us does present a situation where the attached property "is exclusively the property of the defendant", and where the plaintiff "hold[s] no present interest in the property sought to be seized." Di Giovanni sued Doehr because Doehr allegedly assaulted him, breaking his wrist, blackening his eye, and causing various other injuries. Assuming the truth of these bare allegations, and without giving Doehr an opportunity to present his own version of the facts, the court issued an attachment on Doehr's home. There were no allegations that Doehr was about to fraudulently dispose of his home, nor was the attachment necessary to obtain personal jurisdiction over Doehr. Since exigent circumstances of this nature clearly formed the basis for permitting an ex parte seizure in Mitchell, we can hardly rely on Mitchell to uphold a procedure that makes such circumstances irrelevant to the inquiry.
 
 
 18
 The highly factual nature of the issues involved in the ex parte proceeding gives us further reason to doubt the adequacy of existing procedures. The dispositive issues in the ex parte proceeding in Mitchell were simply whether the creditor possessed a lien on goods in the debtor's possession, and whether the debtor had defaulted on his payments. The Court stressed that these were "uncomplicated matters that lend themselves to documentary proof" and that "[t]he nature of the issues at stake minimizes the risk that the writ will be wrongfully issued by a judge." 416 U.S. at 609-10, 94 S.Ct. at 1900-01. Distinguishing Fuentes, the Court observed:
 
 
 19
 In Florida and Pennsylvania property was only to be replevied in accord with state policy if it had been "wrongfully detained." This broad "fault" standard is inherently subject to factual determination and adversarial input. * * * [I]n Fuentes this fault standard for replevin was thought ill-suited for preliminary ex parte determination. In Louisiana, on the other hand, the facts relevant to obtaining a writ of sequestration are narrowly confined. As we have indicated, documentary proof is particularly suited for questions of the existence of a vendor's lien and the issue of default. There is thus far less danger here that the seizure will be mistaken and a corresponding decrease in the utility of an adversary hearing which will be immediately available in any event.
 
 
 20
 Id. 416 U.S. at 617-18, 94 S.Ct. at 1905; see also Mathews v. Eldridge, 424 U.S. 319, 343-44, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976) (medical determination of disability is "sharply focused and easily documented", and thus "[t]he potential value of [a pre-deprivation] evidentiary hearing * * * is substantially less in this context than in Goldberg [v. Kelley, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) ]").
 
 
 21
 Unlike the procedures upheld in Mitchell and Mathews, Connecticut's ex parte proceeding involves the court in a host of difficult factual questions. To issue an attachment, the judge must determine whether "there is probable cause to sustain the validity of the plaintiff's claim". Sec. 52-278e(a). The statute is not limited to simple debtor-creditor disputes, where the likelihood of recovery often can be ascertained from documentary proof submitted by the creditor. Instead, the attachment procedure is available in all civil actions, including those arising from such fact-specific events as fist fights, as illustrated by the facts of the present action. In such a case, how can the judge realistically determine the factual validity of the claim when presented with only the plaintiff's version of the altercation? Requiring the plaintiff to file a factual affidavit, though certainly helpful, is of little assistance when the affidavit merely recites facts that are certain to be sharply disputed by the other party. Because the risk of a wrongful attachment is considerable under these circumstances, we conclude that dispensing with notice and opportunity for a hearing until after the attachment, without a showing of extraordinary circumstances, violates the requirements of due process.
 
 
 22
 Despite the highly error-prone nature of Connecticut's pre-attachment procedure, Di Giovanni and the state insist that the private interest at stake is so minuscule that a prior hearing is not constitutionally required. We are unpersuaded by this argument. An attachment can have a substantial impact on a landowner's ability to sell his property, secure a loan, or obtain credit. Given a particularly unlucky set of circumstances, even a temporary attachment can lead to foreclosure proceedings against the homeowner. See Hiers v. Cohen, 31 Conn.Supp. 305, 329 A.2d 609 (Super.Ct. Hartford Co.1973). In any event, the individual's interest in a prior hearing certainly outweighs the state's interest in postponing the hearing until after attachment, which, in the absence of unusual circumstances, is practically nil. See Shaumyan, 716 F.Supp. at 81 (state's interest "seems minimal at best").
 
 
 23
 C. Attachment Bond.
 
 
 24
 Doehr claims that Sec. 52-278e(a)(1) is also defective because it does not require the plaintiff to post a bond or other security before obtaining an attachment. Most state attachment statutes include at least some procedure for indemnifying the defendant for any loss caused by a wrongful attachment. See Shaumyan, 716 F.Supp. at 81. In Mitchell, for example, the Louisiana sequestration statute required the plaintiff to file a bond "sufficient * * * to protect the [defendant] against all damages in the event the sequestration is shown to have been improvident." 416 U.S. at 606, 94 S.Ct. at 1899. The statute further empowered the court to assess damages in favor of the defendant, including attorney's fees, "whether the writ is dissolved on motion or after trial on the merits." Id. at 617, 94 S.Ct. at 1905. These damages were not limited to actual out-of-pocket losses, but included "injury to social standing or reputation as well as humiliation and mortification." Id. at 606 n. 8, 94 S.Ct. at 1899 n. 8.
 
 
 25
 The Mitchell Court clearly found the bond requirement of the Louisiana statute to play an essential role in protecting the defendant from the effects of an erroneous seizure. See 416 U.S. at 610, 617, 94 S.Ct. at 1901, 1905. Justice Powell, in his concurring opinion in North Georgia Finishing, stated that "the provision of adequate security" is an indispensable procedural safeguard, 419 U.S. at 611, 95 S.Ct. at 725, and four circuit courts have expressed the view that the lack of a bond or damages provision would invalidate an attachment statute. See Watertown Equip. Co. v. Norwest Bank Watertown, 830 F.2d 1487, 1493-94 (8th Cir.1987) ("Clearly, the centrality of an adequate bond for the protection of the debtor was well established by 1975."), cert. denied, 486 U.S. 1001, 108 S.Ct. 1723, 100 L.Ed.2d 188 (1988); Jones v. Preuit & Mauldin, 822 F.2d 998, 1002 (11th Cir.1987) (debtor's "financial interest must be protected in the event of a wrongful prejudgment attachment, either via the posting of a bond by the creditor who seeks the writ, or by allowing an action for damages suffered as a result of a wrongful attachment"), vacated on other grounds, 851 F.2d 1321 (11th Cir.1988) (in banc), vacated and remanded mem., --- U.S. ----, 109 S.Ct. 1105, 103 L.Ed.2d 170 (1989); United States v. Vertol H21C, Reg. No. N8540, 545 F.2d 648, 652 (9th Cir.1976); Jonnet v. Dollar Savings Bank of City of New York, 530 F.2d 1123, 1130 (3d Cir.1976) ("[T]he Pennsylvania attachment rules offer no machinery to indemnify a defendant for damages due to wrongful attachment * * *. A constitutionally valid statute must afford such protection, by bond or otherwise.").
 
 
 26
 The state concedes that defendants must be protected against the wrongful attachment of their property, but insists that Connecticut's vexatious litigation statute, Conn.Gen.Stat. Sec. 52-568, provides adequate protection. Under that statute,
 
 
 27
 Any person who commences and prosecutes any civil action or complaint against another, in his own name, or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages.
 
 
 28
 The state argues that this remedy is all that due process requires, an assertion that, on the surface, appears to find support in the eleventh circuit's dictum in Jones that a debtor's interests can be adequately protected "either via the posting of a bond by the creditor who seeks the writ, or by allowing an action for damages suffered as a result of a wrongful attachment." Jones, 822 F.2d at 1002 (emphasis added); see also Shaumyan, 716 F.Supp. at 80-81 (suggesting that Jones makes a separate action for damages "an option to the preseizure posting of a creditor's bond"). The "action for damages" discussed in Jones, however, was made part of the attachment procedure itself, and the creditor was required to post a bond to cover any such damages. See Jones, 822 F.2d at 1003-04 (discussing Ala.Code Secs. 35-11-111 and 6-6-148). Thus in Jones the defendant could both challenge the propriety of the attachment and recover his damages in the same proceeding, held "before, during, or after the action in which the debtor appears as a defendant." Jones, 822 F.2d at 1004 (citing First National Bank v. Cheney, 120 Ala. 117, 23 So. 733 (1897)).
 
 
 29
 It is entirely different to require the defendant, as Connecticut does, to wait for judgment in the underlying action, and only then prosecute a claim for vexatious litigation. This subjects the defendant not only to the delay and expense of additional litigation, but deprives him of any remedy whatsoever if the underlying action is settled. Blake v. Levy, 191 Conn. 257, 464 A.2d 52 (1983) ("When a lawsuit ends in a negotiated settlement or compromise, it does not terminate in the plaintiff's favor and therefore will not support a subsequent lawsuit for vexatious litigation."). This is particularly troubling in view of the fact that the mere existence of the attachment may weigh heavily in the defendant's decision to reach a settlement. See Note, The Constitutionality of Real Estate Attachments, 37 Wash. & Lee L.Rev. 701 n. 1 (1980) ("Today attachment, if available, is often used as a tactical maneuver to put pressure on a defendant to reach an expeditious settlement of a legal dispute.") (citing New York Judicial Council, Seventh Annual Report 391-93 (1941)); Kheel, New York's Amended Attachment Statute: A Prejudgment Remedy in Need of Further Revision, 44 Brooklyn L.Rev. 199, 201 (1978) (attachment "can lead a defendant to settle a dispute promptly although he may think it likely that he would ultimately prevail against plaintiff's claim").
 
 
 30
 For these reasons, we believe that Connecticut's vexatious litigation statute offers inadequate protection against wrongful attachment, and we conclude that the lack of a bond or security provision in the attachment procedure itself is a flaw of constitutional magnitude.
 
 CONCLUSION
 
 31
 We hold that Conn.Gen.Stat. Sec. 52-278e(a)(1) violates the requirements of due process because (1) it permits the issuance of ex parte attachments in the absence of extraordinary circumstances, and (2) it fails to require the plaintiff to post a bond or other security before obtaining the attachment. The judgment of the district court is reversed and the case is remanded for entry of judgment in favor of Doehr declaring Sec. 52-278e(a)(1) unconstitutional.
 
 
 32
 MAHONEY, Circuit Judge, concurring in the result:
 
 
 33
 I agree with Judge Pratt that Conn.Gen.Stat. Sec. 52-278e(a)(1) (West Supp.1989) is unconstitutional under the fourteenth amendment because, in providing for attachment of real property in civil actions without any pre-attachment hearing, it authorizes deprivations of property without due process of law. I reach this conclusion, however, only because this provision allows attachments of real property whenever a plaintiff makes a sworn showing to a judge "that there is probable cause to sustain the validity of the plaintiff's claim," without any further requirement of exceptional or extraordinary circumstances to justify the attachment. By contrast, when personal property is attached, the same statute (in the same sentence) requires the plaintiff to establish, in addition to the threshold probable cause showing--
 
 
 34
 that there is reasonable likelihood that the defendant (A) neither resides in nor maintains an office or place of business in this state and is not otherwise subject to jurisdiction over his person by the court, or (B) has hidden or will hide himself so that process cannot be served on him or (C) is about to remove himself or his property from this state or (D) is about to fraudulently dispose of or has fraudulently disposed of any of his property with intent to hinder, delay or defraud his creditors or (E) has fraudulently hidden or withheld money, property or effects which should be liable to the satisfaction of his debts or (F) has stated he is insolvent or has stated he is unable to pay his debts as they mature.
 
 
 35
 Conn.Gen.Stat. Sec. 52-278e(a)(2) (West Supp.1989).
 
 
 36
 I do not agree, however, with Judge Pratt's conclusion "that the lack of a bond or security provision in the attachment procedure itself is a flaw of constitutional magnitude," and therefore write separately.
 
 
 37
 Turning first to the areas of my agreement with Judge Pratt's thoughtful opinion, I concur that an attachment results in the deprivation of a constitutionally protected property interest. The deprivation is concededly less severe than in the cases, for example, of a seizure of property or a garnishment of wages. In my view, however, the reasons articulated and precedents cited by Judge Pratt establish that although this consideration impacts upon the extent of constitutionally required protection, some such protection in the case of an attachment of real property is warranted.
 
 
 38
 I also concur that the absence of any requirement of extraordinary circumstances in the case of an attachment of real property renders section Sec. 52-278e(a)(1) unconstitutional, although this conclusion is not entirely free from doubt. Since Judge Pratt has stated the case for this position with both clarity and force, I will confine myself to addressing two objections to it that seem, at least to me, to merit consideration.
 
 
 39
 First, North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975), can be read to intimate that only an "early hearing," and not necessarily a pre-attachment hearing, is constitutionally required. In that event, the provision in section 52-278e(c) for an expeditious post-attachment hearing, at which the owner of property subjected to the attachment may challenge the initial determination of probable cause, would render section 52-278e(a)(1) constitutionally valid.
 
 
 40
 Second, Conn.Gen.Stat. Secs. 52-325, 52-325a and 52-325b (West Supp.1989), which make the lis pendens procedure routinely available in actions "intended to affect real property" and, like section 52-278e, provide only for a post-filing hearing, were upheld against constitutional challenge in Williams v. Bartlett, 189 Conn. 471, 457 A.2d 290, appeal dismissed for want of a substantial federal question, 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67 (1983). The Supreme Court's dismissal of this appeal was a dismissal on the merits and a binding precedent, see Hicks v. Miranda, 422 U.S. 332, 343-45, 95 S.Ct. 2281, 2288-90, 45 L.Ed.2d 223 (1975); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure Sec. 4014, at 638-39 (1977 & Supp.1989), although "not entitled to the same deference given a ruling after briefing, argument, and a written opinion." Caban v. Mohammed, 441 U.S. 380, 390 n. 9, 99 S.Ct. 1760, 1767 n. 9, 60 L.Ed.2d 297 (1979). Williams provides an arguable precedent for upholding section 52-278e(a)(1) against a due process challenge.
 
 As we recently said, however:
 
 41
 As a general rule, due process has been held to require notice and an opportunity to be heard prior to the deprivation of a property interest, see Fuentes v. Shevin, 407 U.S. 67, 81-82, 92 S.Ct.1983, 1994-95, 32 L.Ed.2d 556 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969), in the absence of an " 'extraordinary situation[ ]' " that justifies postponing notice and opportunity for hearing. Fuentes, 407 U.S. at 90, 92 S.Ct. at 1999 (quoting Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). But see Mitchell v. W.T. Grant Co., 416 U.S. 600, 611-19, 94 S.Ct. 1895, 1902-06, 40 L.Ed.2d 406 (1974).
 
 
 42
 United States v. Premises & Real Property at 4492 S. Livonia Rd., 889 F.2d 1258, 1263 (2d Cir.1989) (emphasis added), reh'g denied, 897 F.2d 659 (2d Cir.1990). I see no basis to depart from this rule here. Although Livonia involved a seizure, all members of the present panel apparently agree that a constitutional "deprivation of a property interest" results from an attachment of real property. Connecticut's interest in routinely allowing pre-hearing attachments in all cases where the attachment is directed to real property and the plaintiff can make an ex parte showing of probable cause regarding the merits, on the other hand, seems virtually nugatory in terms of the standards articulated by the Supreme Court and outlined in Livonia.
 
 
 43
 I would not read Di-Chem to establish that any "early hearing" imparts constitutional validity to a deprivation of a property interest, whether the hearing occurs before or promptly after the challenged deprivation. The phrase "early hearing" was addressed to a statutory scheme which provided no hearing at any time during the pendency of the litigation to challenge the bona fides of the plaintiff's garnishment. I see no warrant for seizing upon this phrase to undercut the general thrust of the Supreme Court's rulings in this area, as we have recently summarized them in Livonia. This is especially so since Livonia relies heavily on Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and two separate opinions in Di-Chem regard that case's main impact to be a reassertion of the authority of Fuentes. See Di-Chem, 419 U.S. at 608, 95 S.Ct. at 723 (Stewart, J., concurring); 419 U.S. at 609, 95 S.Ct. at 723 (Powell, J., concurring in the judgment).
 
 
 44
 Similarly, I would not read the Supreme Court's dismissal of the appeal in Williams v. Bartlett as a wholesale authorization of pre-hearing attachments of real property without regard to exceptional circumstances. As stated earlier, such a Supreme Court determination has precedential force, but of a limited nature. Even if this ruling can be read to intimate a more relaxed view of constitutional requirements where a provisional remedy leaves an owner with the use and occupancy of real property, I see little warrant, reading this summary ruling in the overall context of the Supreme Court's opinions in this area, to extend the relaxation beyond the lis pendens procedure. In the case of a lis pendens, the plaintiff has an interest in the specific property in question, see Williams, 189 Conn. at 479-80, 457 A.2d at 294 (lis pendens function of preventing prejudgment transfer of property particularly important, because of uniqueness of real estate, where plaintiff seeks specific performance relative to affected property), and the state has a more sharply defined interest in this "specified procedure whereby the rights of third-party purchasers are readily defined," id.
 
 
 45
 In sum, for the reasons stated at greater length and with considerably greater force by Judge Pratt, I concur in his conclusion that section 52-278e(a)(1) is constitutionally defective because, unlike subdivision (2) of the same section (and sentence) dealing with personal property, it includes no requirement of extraordinary circumstances for the attachment of real property prior to any adversary hearing concerning that attachment. This brings me to my point of disagreement with Judge Pratt's opinion.
 
 
 46
 As indicated earlier, I do not agree that section 52-278e is constitutionally defective because it does not require a plaintiff to post a bond or other security before obtaining an attachment. Judge Pratt apparently accepts the ruling in Jones v. Preuit & Mauldin, 822 F.2d 998 (11th Cir.1987), vacated on other grounds, 851 F.2d 1321 (11th Cir.1988) (in banc), vacated and remanded mem., --- U.S. ----, 109 S.Ct. 1105, 103 L.Ed.2d 170 (1989), that a debtor's "financial interest must be protected in the event of a wrongful prejudgment attachment, either via the posting of a bond by the creditor who seeks the writ, or by allowing an action for damages suffered as a result of a wrongful attachment." Id. at 1002 (emphasis added). He observes, however, that the statute considered in Jones allowed the defendant to challenge the propriety of the attachment and recover his damages in the same proceeding, whereas he deems the pertinent Connecticut provision, Conn.Gen.Stat. Sec. 52-568(a) (West Supp.1989), to require the defendant to bring a separate action for damages. He further concludes that the requirement of a separate action presents a distinction of constitutional dimension.
 
 
 47
 I would hesitate to join in this conclusion, which seems to break new ground in its interpretation of due process requirements. I do not believe that we need reach this question, however, because I disagree with the reading of Connecticut law upon which it is premised. Specifically, it would appear that the challenge of a defendant to an attachment pursuant to section 52-278e(a)(1) could be litigated, pursuant to the Connecticut vexatious litigation statute, Conn.Gen.Stat. Sec. 52-568(a) (West Supp.1989), at the conclusion of the litigation in which the attachment occurred. In Hydro Air of Conn., Inc. v. Versa Technologies, 99 F.R.D. 111 (D.Conn.1983), where a defendant was allowed to plead a counterclaim pursuant to section 52-568(a), the court said:
 
 
 48
 Of course, a ruling on [defendant's] counterclaim must await a decision on the merits of [plaintiff's] complaint. As a matter of judicial economy, the court will permit [defendant] to raise its claim that the instant suit is vexatious as a counterclaim. In this way, the question of whether [plaintiff] has sued vexatiously can be considered along with the merits of that claim and a decision on the counterclaim rendered speedily after the main suit is terminated, without the necessity of a separate proceeding. Cf. Fed.R.Civ.Pro. 54(b). Compare Paint Products Co. v. Minwax Co., 448 F.Supp. 656, 658 (D.Conn.1978) (Daly, J.) ("Given the requirement that the suit must terminate in favor of the defendant, it is impossible to use vexatious litigation as a counterclaim in the very suit the defendant claims is vexatious.") with Sonnichsen v. Streeter, 4 Conn.Cir. 659, 666-67, 239 A.2d 63 (1967) ("There appears to be no practical need for further litigation, and justice will best be served if the residuum of issues be terminated in the present suit.").
 
 
 49
 99 F.R.D. at 113.
 
 
 50
 As this quotation indicates, a prior decision of the same court, Paint Products Co., takes a view opposed to that expressed in Hydro Air. Paint Products Co., however, does not cite Sonnichsen v. Streeter, which appears to establish a Connecticut rule that damages for vexatious litigation may be recovered by counterclaim in the very action which constitutes the vexatious litigation. See Sonnichsen, 4 Conn.Cir.Ct. at 665-68, 239 A.2d at 67-69. I therefore conclude that section 52-568(a) cures any constitutional deficiency that might otherwise result from the failure of section 52-278e to include a bond or security requirement for the plaintiff.
 
 
 51
 It is true, as Judge Pratt points out, that the statutory remedy provided by Connecticut would not be available where a case settles. As a practical matter, however, most settlements would require a defendant to release an attaching plaintiff from further liability to the defendant, whatever the statutory or other basis of the defendant's rights and remedies vis-a-vis the attachment.
 
 
 52
 I note, finally, that an invalidation of section 52-278e on this separate ground in its application to real property (subdivision (1)) would apply with equal force, by necessary implication, to the application of this section to personal property (subdivision 2). There is no distinction between these subdivisions with respect to the failure of the attachment statute to include a bond or security requirement for the plaintiff. Accordingly, if the Connecticut vexatious litigation statute, section 52-568(a), is not deemed to cure the perceived deficiency as to real property, it would be equally ineffective with respect to personal property, and section 52-278e would be unconstitutional in toto for failure to include a bond or security requirement for the plaintiff.
 
 
 53
 In sum, I concur in Judge Pratt's opinion for the court to the extent that it invalidates Conn.Gen.Stat. Sec. 52-278e(a)(1) for its authorization of attachments of real estate in civil cases prior to any adversary hearing, on the basis of an ex parte showing "that there is probable cause to sustain the validity of the plaintiff's claim," but do not join that opinion in its ruling that "the lack of a bond or security provision in the attachment procedure itself is [an additional] flaw of constitutional magnitude."
 
 JON O. NEWMAN, Circuit Judge (dissenting):
 
 54
 Because I do not believe that the Connecticut prejudgment remedy for attaching real property is unconstitutional, I respectfully dissent.
 
 
 55
 Connecticut permits any person starting a lawsuit to file on the land records an attachment of the real property of the defendant. Conn.Gen.Stat. Sec. 52-278e(a)(1). This prejudgment remedy assures the plaintiff a source of funds in the event the lawsuit is successful. To obtain this attachment the plaintiff must present sworn evidence sufficient to persuade a state court judge at an ex parte hearing that probable cause exists to believe that the lawsuit will be successful. Id. If an attachment is permitted, the defendant is entitled to an "expeditious" adversary hearing at which the attachment will be dissolved unless the plaintiff establishes probable cause in the context of an adversary hearing. Id. Sec. 52-278e(c). Connecticut permits appellate review of an order denying a motion to dissolve an attachment. Id. Sec. 52-278l (a). To assure that a defendant becomes aware of his right to challenge an ex parte real estate attachment, Connecticut requires the attaching plaintiff to serve the defendant with notice of his right to a hearing to challenge the claim of probable cause, to request that the attachment be vacated or modified, or that a bond be substituted, or to claim exemption from attachment. Id. Sec. 52-278e(b). Connecticut also permits a defendant to recover double damages for commencing a civil lawsuit without probable cause. Id. Sec. 52-568(a)(1) (West Supp.1989).
 
 
 56
 The Court concludes that these protections fall short of the requirements of the Due Process Clause. The Court believes that a real estate attachment may not be issued until probable cause has been established at an adversary hearing. In addition, Judge Pratt believes that due process requires Connecticut to condition the grant of an attachment on the plaintiff's posting a bond for damages in the event the attachment is determined to be wrongful and to provide a damage remedy for wrongful attachment as part of the attachment scheme, rather than as part of the general remedy for vexatious litigation. However, since this latter point does not command the support of a majority of the panel, it is not a requirement imposed by today's ruling.
 
 
 57
 The Due Process Clause is not a code of civil procedure. It assures that no state will "deprive" any person of "property" without "due process of law." U.S. Const. amend. XIV. An ex parte prejudgment attachment of real estate does not deprive the owner of any possessory rights in his property. At most, it impairs the market value of the property during the brief interval between the ex parte attachment and the "expeditious" adversary hearing required by state law. If the owner has no plans to sell the property or borrow upon it during that interval, the ex parte attachment has caused him no adverse consequence. If, during that interval, he wishes to realize the full market value of his property, he may replace the attachment with a bond.[1] Nevertheless, I can agree that the impaired market value, though temporary and remediable, is a sufficient "deprivation" to warrant some due process protection. I disagree, however, that due process requires more than Connecticut has provided, which includes (1) a demonstration of probable cause, (2) factual allegations, (3) evidence supported by oath, (4) a pre-attachment determination by a state court judge of the sufficiency of the probable cause showing, (5) a prompt post-attachment adversary hearing, (6) notice of the right to such a hearing, (7) appellate review of an adverse decision, and (8) double damages in the event suit is commenced without probable cause.
 
 
 58
 The Court finds these protections constitutionally deficient for lack of a pre-attachment adversary hearing. Reliance is placed on a line of Supreme Court cases dealing with prejudgment remedies. See Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895 (1974); North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719 (1975). All of these cases, however, are distinguishable from the pending case in a crucial respect: They involved prejudgment remedies that totally deprived the defendant of the possession, use, and enjoyment of his property. In Sniadach, the defendant lost his wages, "a specialized type of property presenting distinct problems in our economic system." 395 U.S. at 340, 89 S.Ct. at 1822. In Fuentes, the defendants lost their personal property, which was seized and sold. In Mitchell, where an ex parte hearing was deemed sufficient, property was seized and sequestered. In Di-Chem, funds owed to the defendant were garnished, putting them "totally beyond use during the pendency of the litigation." 419 U.S. at 606, 95 S.Ct. at 722. I see no basis to apply the same due process protections deemed necessary for these total deprivations of property to the relatively minor impairment of interests caused by an attachment of real estate. Though the impairment may be deemed a deprivation, it is one so slight as to require no more process than Connecticut has provided.[2]
 
 
 59
 The Court supports the equation between the total deprivations involved in the Supreme Court's prejudgment remedy cases and the minor impairment involved in this case by enlisting our recent decision in United States v. Premises & Real Property at 4492 S. Livonia Rd., 889 F.2d 1258, 1263 (2d Cir.1989), where we said, "As a general rule, due process has been held to require notice and an opportunity to be heard prior to the deprivation of a property interest." But Livonia, which I joined, involved precisely the type of total deprivation that the Supreme Court cases on prejudgment remedies had involved: The Government's process, obtained ex parte, entitled it to seize the defendant's home. Requiring an adversary hearing before that type of deprivation is no authority for imposing the same procedure on an impairment of market value that will last but a few days and can very likely be removed at once in favor of a bond if circumstances warrant.
 
 
 60
 The private interest affected is the first of the three factors to be assessed in determining how much process is due. See Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976). In Sniadach and its progeny the private interest was significant. In the pending case, it is far less significant and, for all that appears in the record, is entirely theoretical. There is no indication that the landowner sought to sell his property or borrow on it during the interval between the ex parte hearing and his opportunity for a prompt adversary hearing.
 
 
 61
 The Supreme Court has informed us that not every state sanctioned impairment in the marketability of real property must be preceded by an adversary hearing. See Bartlett v. Williams, 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67 (1983) (dismissing for want of a substantial federal question an appeal challenging Connecticut's lis pendens procedure, Conn.Gen.Stat. Secs. 52-325, -325a, 325b, for lack of a pre-filing hearing). Though not entitled to the same deference due a decision reached after plenary consideration, Caban v. Mohammed, 441 U.S. 380, 390 n. 9, 99 S.Ct. 1760, 1767 n. 9, 60 L.Ed.2d 297 (1979), the dismissal in Bartlett is a ruling on the merits and a binding precedent, Hicks v. Miranda, 422 U.S. 332, 343-45, 95 S.Ct. 2281, 2288-90, 45 L.Ed.2d 223 (1975). The case for allowing an ex parte lis pendens procedure may be somewhat stronger than the case for allowing ex parte prejudgment attachments, but from the standpoint of the private interest adversely affected, the attachment and the lis pendens are indistinguishable, and both are far less significant than the total deprivations that occurred in the Sniadach line of cases.
 
 
 62
 Moreover, in Di-Chem the Supreme Court identified the defects of the Georgia garnishment procedure as lack of participation by a judicial officer, lack of notice to the defendant, and lack of opportunity for an "early hearing." 419 U.S. at 606, 95 S.Ct. at 722. If the Court had shared the view of the panel majority in this case that due process requires an adversary hearing before any prejudgment remedy may issue, it could hardly have contented itself with pointing out the lack of an "early hearing."
 
 
 63
 Judge Pratt, but not Judge Mahoney nor myself, finds the Connecticut statute additionally deficient because damages for wrongful attachment are not secured by a bond nor recoverable in the litigation in which the attachment was obtained. I agree with Judge Mahoney that Connecticut appears to allow a claim for wrongful commencement of litigation to be presented as a counterclaim in the main lawsuit. See Sonnichsen v. Streeter, 4 Conn.Cir.Ct. 659, 666-67, 239 A.2d 63, 67-69 (1967); see also Hydro Air of Conn., Inc. v. Versa Technologies, Inc., 99 F.R.D. 111 (D.Conn.1983) (applying Connecticut law). Even if state law required a separate lawsuit, I do not believe that the Constitution regulates state procedure to the extent of insisting that damages for wrongful attachment must be available in the underlying lawsuit rather than in a subsequent suit.
 
 
 64
 More fundamentally, however, I do not agree that a damage suit or a bond requirement is a constitutionally mandated component of a valid prejudgment remedy. The bond requirement was urged by Justice Powell, speaking only for himself in his concurrence in Di-Chem, 419 U.S. at 611, 95 S.Ct. at 725. We should be chary of concurrence jurisprudence. The Supreme Court has an obligation, especially when outlining new constitutional requirements,[3] to express a ruling that commands the support of a majority of the Court. The modern Court has considered various forms of prejudgment remedies on four occasions. It has found the procedures constitutionally deficient in Sniadach, Fuentes, and Di-Chem, and valid in Mitchell. None of these decisions holds that due process requires the attaching plaintiff to post a bond and respond in damages for wrongful attachment. Due process is the procedure constitutionally required for taking certain kinds of action; it is not a guaranty of damage remedies for wrongful action, much less of security for the recovery of such damages.
 
 
 65
 I must acknowledge that the Supreme Court's opinion in Mitchell, upholding the validity of a prejudgment sequestration remedy, contains favorable references to a damage action for wrongful issuance of a writ, 416 U.S. at 617, 94 S.Ct. at 1905, and to the plaintiff's obligation to post a bond to secure such damages, id. at 608, 94 S.Ct. at 1900. But I see no basis for translating these references into constitutional requirements. The damage remedy was mentioned only as a feature that "buttressed" the state's basic protection of providing judicial control of the entire sequestration process, id. at 617, 94 S.Ct. at 1905, and the bond requirement seems to be mentioned only in describing the overall system, id. at 608, 94 S.Ct. at 1900. I have no doubt that such features are meritorious. I do not believe, however, that the Supreme Court regards them as constitutional requirements.
 
 
 66
 Connecticut's procedure for prejudgment real estate attachments has been held to comport with due process requirements by a unanimous Connecticut Supreme Court, see Fermont Division, Dynamics Corp. of America, Inc. v. Smith, 178 Conn. 393, 423 A.2d 80 (1979) (Peters, J.), and by three judges of the District Court for the District of Connecticut, see Shaumyan v. O'Neill, 716 F.Supp. 65 (D.Conn.1989) (Nevas, J.); Pinsky v. Duncan, 716 F.Supp. 58 (D.Conn.1989) (Eginton, J.); Read v. Jacksen, Civ. No. B-85-85, 1988 WL 163017 (D.Conn. Feb. 18, 1988) (Zampano, J.). The opinions of now Chief Justice Peters in Fermont and of Judge Nevas in Shaumyan are particularly thoughtful and persuasive. Though in dissent, I am pleased to note my agreement with their views.
 
 PRATT, Circuit Judge:
 
 67
 John F. Di Giovanni and the State of Connecticut have petitioned for rehearing of our decision in this appeal filed on March 9, 1990. The petitions are granted only insofar as we amend our prior opinion to hold that, except for the present case, our declaration of the unconstitutionality of Conn. Gen. Stat. Sec. 52-278e(a)(1) shall have prospective effect only, i.e., shall be applicable only to attachments filed after March 9, 1990. The petitions are denied in all other respects.
 
 
 68
 In its petition, the State of Connecticut suggests that our decision is contrary to McCahey v. L.P. Investors, 774 F.2d 543 (2d Cir. 1985), a case not originally cited to us by any of the briefs of any party. While there is passing dictum in McCahey that might be interpreted as inconsistent with the panel majority's opinion, the point was not extensively considered there and we do not view McCahey's holding as conflicting with our own.
 
 
 69
 The state also suggests that it was not given sufficient opportunity to intervene under 28 U.S.C. Sec. 2403(b). Although the district court failed to notify the state of its right to intervene, we afforded it that opportunity on appeal. The state accepted the invitation, fully briefed the constitutional issues for us, and in doing so made no claim that it wished to reopen the trial record to present additional evidence. We are satisfied that its interests have been adequately protected.
 
 
 70
 Finally, in order to avoid ambiguity, the following references in the slip opinion to Conn. Gen. Stat. Sec. 52-278e will be expanded in the final opinion to read Sec. 52-278e(a)(1).*
 
 
 71
 * Note: Changes have been incorporated into the opinion.
 
 
 72
 So ordered.
 
 
 
 [1]
 If a request to replace the attachment with a bond were denied, it would be arguable that the statute has been unconstitutionally applied. But no such request was made or refused in this case
 
 
 [2]
 In Fuentes v. Shevin, 407 U.S. at 86, 92 S.Ct. at 1997, the Court observed, "The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause." Thus, the brief duration of the impairment in the market value of the property does not remove it from the category of "deprivation" entitled to due process protection, but surely the brevity of the impairment significantly affects the extent of process that is due. "[T]he length ... of a deprivation of use or possession would be another factor to weigh in determining the appropriate form of hearing...." North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. at 606, 95 S.Ct. at 722
 
 
 [3]
 In an earlier day, prejudgment remedies without a prior adversary hearing were routinely found to be constitutional. See McKay v. McInne, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929) (per curiam); Coffin Bros. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928); Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921)