**CITIBANK, N.A., Plaintiff,**

v.

**ALLIED MANAGEMENT GROUP, INC.; Rafael Portela Rodriguez, Maritza Botella Barcelo, and their Conjugal Partnership; The Two Towers Corporation; Investors and Developers Consultants, Inc.; Allied Investment, Inc.; Marles Incorporated, Defendants.**

Civil No. 06–1193(GAG).

United States District Court, D. Puerto Rico.

Dec. 12, 2006.

Angel Sosa–Baez, Jaime E. Toro–Monserrate, Toro, Colon, Mullet, Rivera & Sifre Sifre, PSC, San Juan, PR, for Plaintiff.

Jose L. Gonzalez–Castaner, Gonzalez Castaner & Morales Cordero Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

GELPI, District Judge.

This matter is before the court on the Portela Defendants'[1] motion to reiterate request to set aside ex-parte attachments. *See* Docket No. 56. In this motion, the Portela Defendants ask the court to reconsider its previous grant of plaintiff's motions for attachment. *See* Dockets Nos. 11 and 12. Specifically, the Portela Defendants allege that plaintiff's ex-parte attachments should be set aside because the Portela Defendants received no notice or hearing before the attachments were is-

---

1. The term refers collectively to Rafael Portela Rodriguez, Maritza Botella Barcelo and the Conjugal partnership composed by both of them, Allied Management Group, Inc., Allied Investment, Inc., and the Two Towers Corp.

sued, as required by Due Process and Puerto Rico law. Alternatively, the Portela Defendants ask for a post-attachment hearing. After reviewing the pleadings, the court denies at this time the Portela Defendants' request to set aside the ex-parte attachments. However, the court concludes that a post-attachment hearing is warranted.

## I. Relevant Factual and Procedural Background

### A. Complaint

On February 22, 2006, Citibank filed a breach of contract suit against defendants. *See* Docket No. 1. In the complaint, Citibank alleged that it provided financing to Lincoln Realty, Inc., now known as Allied Management Group, Inc. (Allied), for the acquisition of various real estate properties. As part of the loan agreements, Lincoln agreed to pay Citibank post-closing fees in the form of a participation interest in the rental income and sales proceeds of the properties known as Citibank Towers and Plaza del Este. Rafael Portela Rodriguez, Allied's main shareholder, and his wife, Maritza Botella Barcelo, personally guaranteed the loans. Additionally, various corporations in which Portela is the main or sole shareholder also provided guarantees. After Lincoln failed to pay the post-closing fees, Citibank brought this breach of contract suit.

### B. Attachment Orders

On February 22, 2006, Citibank filed two motions seeking the attachment of property belonging to the Portela Defendants up to the amount of $4,454,827.66. *See* Dockets Nos. 4 and 5. In these motions, Citibank suggested the imposition of a bond requirement in the amount of $222,741.38. The court accepted this suggestion, and on April 20, 2006, Citibank posted a bond for said amount. *See* Docket Nos. 8 and 10.

On April 25, 2006, the court issued two orders, without giving the defendants notice or holding a hearing, through which it ordered the attachment of real and movable property belonging to the Portela Defendants up to the amount requested by Citibank. *See* Docket Nos. 11 and 12. Citibank executed the attachment orders and garnished several banking accounts belonging to the Portela Defendants. *See* Docket Nos. 20 and 27.

On June 22, 2006, the Portela Defendants filed a motion to set aside the ex-parte attachments. *See* Docket No. 28. The court denied this motion on September 20, 2006, subject to its discussion during the Initial Scheduling Conference. *See* Docket No. 54. During the Initial Scheduling Conference held on October 6, 2006, the court determined that the Portela Defendants could file a motion seeking reconsideration of the order denying the Portela Defendant's motion to set aside the ex-parte attachments. *See* Docket No. 55. Accordingly, the Portela Defendants filed on October 23, 2006 a motion to reiterate request to set aside ex-parte attachments. *See* Docket No. 56. This is the motion that is before the court today.

## II. Standard for Obtaining Ex–Parte Prejudgment Attachment

■ Federal Rule of Civil Procedure 64 provides that provisional remedies to secure the satisfaction of a judgment ultimately to be entered are available at the beginning of, or during the pendency of a federal action "... under the circumstances and in the manner provided for by the law of the state in which the district court is held ..." Fed.R.Civ.P. 64. Thus, Puerto Rico law provides the legal framework to analyze Citibank's ex-parte attachments. The Puerto Rico Supreme Court has held that, as a general rule, in any case in which an attachment is sought,

prior notice and hearing, and a bond are required before the court renders a decision. *Rivera Rodriguez v. Stowell,* 133 D.P.R. 881, 896 (1993). Notice or hearing may be postponed until after the attachment is effected only in those instances in which the claimant has alleged or demonstrated: (1) a prior property interest on the asset to be attached; (2) the existence of extraordinary circumstances; or (3) a probability of prevailing on the merits through the use of authentic documentary evidence which shows that there is a debt liquid, due, and payable. *Id.* at 899–900.

■ Additionally, procedures for creating and enforcing attachments "are subject to the strictures of due process." *Connecticut v. Doehr,* 501 U.S. 1, 12, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (quoting *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 85, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988)). In *Doehr,* the United States Supreme Court held that a state statute authorizing the prejudgment attachment of real estate without prior notice or hearing and without requiring a showing of exigent circumstances did not satisfy due process requirements. *Doehr,* 501 U.S. at 18, 111 S.Ct. 2105. In its analysis, the Court applied the *Mathews* test to determine what process is due when effecting an attachment. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Applying *Mathews,* the Court in *Doehr* balanced: (1) "the private interest that will be affected by the prejudgment measure;" (2) "the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards;" and (3) "the interest of the party seeking the prejudgment remedy ..." *Doehr,* 501 U.S. at 11, 111 S.Ct. 2105. The Court resolved that the private interest that will be affected by the prejudgment measure is significant because "attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chances of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default when there is an insecurity clause." *Id.* at 11. Similarly, the Court found that the risk of erroneous property deprivation was substantial because the filing of an affidavit sufficed to authorize attachment. *Id.* at 12–14. In contrast, the Court found that the interest of the party seeking the attachment was *de minimis* because this party had no existing interest in the property sought to be attached. *Id.* at 16.

### III. Legal Analysis

The Portela Defendants have moved to set aside the ex-parte attachments sought by Citibank on the ground that the they received no notice or hearing prior to the issuance of the attachment orders, as required by Due Process and Puerto Rico law. To determine whether a pre-attachment hearing was required, the court will examine whether Citibank has alleged or demonstrated: (1) a prior property interest on the assets that were attached; (2) the existence of extraordinary circumstances; or (3) a probability of prevailing on the merits through the use of authentic documentary evidence showing that there is a debt liquid, due, and payable. *Stowell,* 133 D.P.R. at 899–900. If Citibank alleged or demonstrated any of these conditions, then a pre-attachment hearing was not required. *Id.*

#### A. Prior Property Interest

■ Citibank argues that it has rights over the assets attached because the Portela Defendants executed before a notary public guaranty documents granting Citibank a right to apply any money in which they have any interest to the pay-

ment of their obligations. *See* Exhibits V, VI, and VII in Docket No. 1. The Puerto Rico Supreme Court has stated that "A preexisting property interest on the debtor's real or personal property exists when one of the following occurs: 'mortgages, conditional sales, leasing, and the co-ownership situation that arises in cases involving judicial division of community assets.'" *Stowell*, 133 D.P.R. at 901 n. 17 (quoting *Comentario: Caso Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), VII–2 Forum 30 (1991)). The guaranty documents that Citibank is relying on to create a preexisting property interest do not deal with mortgages, conditional sales, leasing, or community assets. Accordingly, the court is unable to conclude that Citibank has alleged or demonstrated a prior property interest in the assets that it attached from the Portela Defendants to warrant an ex-parte prejudgment attachment.

### B. Extraordinary Circumstances

■ Citibank claims that there are extraordinary circumstances in this case because the Portela defendants have caused the merger, consolidation, or dissolution of at least two of the guarantors. The Puerto Rico Supreme Court has adopted the definition of extraordinary circumstances given by the United States Supreme Court in *Doehr*. *Stowell*, 133 D.P.R. at 900. In *Doehr*, the Court defined extraordinary circumstances as those in which there is a showing that reasons exist to believe that the defendant is carrying out actions to transfer or encumber his or her properties in such a manner as to impair the execution of an adverse judgment. *Doehr*, 501 U.S. at 16, 111 S.Ct. 2105. *See also Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 609, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 90–92, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 339, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Under Puerto Rico law, merely alleging that there are extraordinary circumstances is not enough to overcome the constitutional interest in protecting property rights. *Ramos de Szendrey v. Colon Figueroa*, 153 D.P.R. 534, 547 (2001). The Puerto Rico Constitution requires an allegation of extraordinary circumstances that is more substantiated and reasonable. *Id.* The party seeking an ex-parte attachment must present prima facie evidence or a sworn statement reasonably substantiating the allegation of extraordinary circumstances. *Rivera Ortiz v. Rodriguez Pabon*, 2002 WL 2029589 at *6 (P.R. Cir.2002) (citing *Szendrey*, 153 D.P.R. at 539).

■ Citibank's evidence of extraordinary circumstances consists of the Portela Defendants' acknowledgment in their Answer, which was filed almost five months after Citibank filed its two attachment motions, that two of the defendant corporations have merged. *See* Docket No. 34 at 3, 6. The court finds that this evidence does not reasonably substantiate that the Portela Defendants are about to take an action during the pendency of this suit that would render them unable to satisfy a judgment in Citibank's favor. *See Doehr*, 501 U.S. at 16, 111 S.Ct. 2105. Thus, the court cannot conclude that Citibank has alleged or demonstrated extraordinary circumstances to warrant an ex-parte prejudgment attachment.

### C. Documentary Evidence Showing Debt is Liquid, Due, and Payable

■ A court may issue an ex-parte attachment order if the claimant alleges or demonstrates, with authentic documentary evidence, the existence of a debt that is liquid, due, and payable. *Stowell*, 133 D.P.R. at 900. Citibank argues that the

documents executed by the defendants and the sworn statement of Maritza Abdia, who computed the amounts that the Portela Defendants allegedly owe to Citibank under the loan agreements, demonstrate that the debt Citibank claims is liquid, due, and payable. The Portela Defendants contend that Ms. Abadia's statement is not an authentic document under *Stowell*, and that the amount Citibank claims is not a liquid debt.

■ Under Puerto Rico law, Ms. Abadia's sworn statement qualifies as an authentic document for purposes of *Stowell*. *See e.g., Banco De Desarrollo Economico Para Pr v. Bay Tex Int'l Corp.*, 2004 WL 3199145 at *7 (P.R. Cir.2004). In *Bay Tex*, plaintiff bank entered into a loan agreement with defendant corporation. *Id.* at *1. The corporation's president and his wife personally guaranteed the loan with a promissory note. *Id.* In addition, the corporation assigned Bay Tex the right to receive payment on some outstanding accounts and a promissory note payable to the corporation. The corporation's president also pledged a mortgage note. *Id.* After the corporation defaulted on the loan, the bank brought suit to collect money still owed under the loan agreement and to foreclose the mortgage. *Id.* While the suit was pending, the bank moved to obtain an ex-parte prejudgment attachment. *Id.* To satisfy the authentic document requirement under *Stowell*, the bank offered the loan agreement, promissory note, contract of pledge, mortgage note, chattel mortgage, and sworn statement. *Id.* at *7. Based on the sworn statement establishing the existence and balance of the debt, and the documents evidencing the loan and mortgage, the trial court issued an ex-parte attachment order. *Id.* On appeal, the Puerto Rico Court of Appeals found that the ex-parte attachment

was done in accordance with the law and the applicable jurisprudence. *Id.*

To satisfy the authentic document requirement under *Stowell*, Citibank presented an affidavit by Ms. Maritza Abadia, who has worked as a Citibank Vice–President in its Corporate Banking Area since 1981. *See* Docket No. 1, Exhibit VIII. In her affidavit, Ms. Abadia states that she made certain calculations, in accordance with the relevant contractual provisions, using information provided by Allied, and that she came up with the amounts set forth in her statement. Ms. Abadia's affidavit, like the statement in *Bay Tex*, was sworn before a notary and sought to establish the existence and quantity of a debt. Accordingly, the court concludes that Ms. Abadia's affidavit qualifies as an authentic document under *Stowell*.

■ To fulfill the documentary evidence exception under *Stowell*, Citibank must also allege or demonstrate that the amount it claims is liquid. *Stowell*, 133 D.P.R. at 900. A debt is liquid when the amount of money owed is "certain" and "determined." *Szendrey*, 153 D.P.R. at 546, *translated in* 2001 JTS 33. In *Szendrey*, two lawyers represented ten clients in a complex mortgage foreclosure action pursuant to an agreement in which the lawyers would receive 10% of the assets obtained by their clients. *Id.* at 536. When two of the ten clients refused to pay the lawyer's legal fees, the lawyers brought suit against them. *Id.* The trial court entered a partial summary judgment in the lawyers' favor and ordered the parties to agreed on a appraiser to determine the properties' value to compute the corresponding 10% in legal fees. *Id.* at 538. The lawyers then moved the trial court to issue an ex-parte attachment against the clients' real estate. *Id.* The trial court imposed a bond and ordered the attachment of the clients' real property. *Id.* at 539. The clients filed an

interlocutory appeal to challenge the issuance of the attachment order on the ground that it was issued without prior notice or hearing. *Id.* at 540. The Puerto Rico Court of Appeals affirmed the trial court. On further appeal, the Puerto Rico Supreme Court reversed, inter alias, because the debt claimed by the lawyers was not liquid. *Id.* at 546. The Court found that since the value of the assets recovered in the foreclosure action had to be determined, the amount owed in attorneys fees was not certain or determined. *Id.*

The Portela Defendants argue that under *Szendrey* the debt Citibank claims is neither certain nor determined. The court disagrees with this conclusion. In *Szendrey,* an appraisal was not performed before the attachment. In the case at bar, an appraisal was performed before the attachment. Prior to moving for an attachment, Citibank determined the amount that the Portela Defendants owe in post-closing fees by making an arithmetic computation using information provided by the Portela Defendants. *See* Docket No. 1, Exhibit VIII. This calculation makes the debt Citibank claims certain and determined. Thus, the court concludes that Citibank has alleged and demonstrated a probability of prevailing on the merits through the use of authentic documentary evidence showing that there is a debt liquid, due, and payable.

### D. Post–Attachment Hearing

■ Having found that Citibank's ex-parte attachments satisfied the constitutional requirements and complied with the applicable Puerto Rico law, the court must determine whether the Portela Defendants are entitled to a post-attachment hearing. In *Doehr,* the United States Supreme Court stated that "a prior hearing may be postponed where exceptional circumstances justify such a delay, and where sufficient additional safeguards are present." *Doehr,* 501 U.S. at 8, 111 S.Ct. 2105 (quoting *Pinsky v. Duncan,* 898 F.2d 852, 855 (2d Cir.1990)). Similarly, the Puerto Rico Supreme Court has stated that notice or hearing may be postponed until after the attachment is effected only in those instances in which the claimant has alleged or demonstrated: (1) a prior property interest on the asset to be attached; (2) the existence of extraordinary circumstances; or (3) a probability of prevailing on the merits through the use of authentic documentary evidence which shows that there is a debt liquid, due, and payable. *Stowell,* 133 D.P.R. at 899–900. These decisions suggest that in the limited circumstances in which a party may obtain a prejudgment attachment without notice or prior hearing, the Constitution and Puerto Rico law mandate a post-attachment hearing in which the parties whose property rights were affected by the attachment are given an opportunity to challenge a seizure of their property. Accordingly, the court finds that the Portela Defendants are entitled to a post-attachment hearing under the Constitution and Puerto Rico law.

### IV. Conclusion

For the foregoing reasons, the Portela Defendants' motion to reiterate request to set aside ex-parte attachments (Docket No. 56) is hereby denied to the extent it seeks to vacate said attachments. Notwithstanding, the court will hold a post-attachment hearing, to be set via a separate order.

**SO ORDERED.**