BURCH WILLIAMS ET AL. *v.* JOHN R. BARTLETT, JR., ET AL.

(10889)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued December 9, 1982—decision released March 15, 1983

---

*Donald A. Mitchell,* for the appellants (defendants).

*Carter LaPrade,* for the appellees (plaintiffs).

GRILLO, J.   This appeal from the trial court's judgment denying an application to discharge a notice of lis pendens raises the following issues: (1) whether the lis pendens statute comports with procedural due process guarantees; (2) whether the trial court applied the correct standard by which the propriety of a notice of lis pendens is tested; and (3) whether the evidence presented is sufficient to sustain the trial court's decision.

Th trial court could reasonably have found the following:   In 1970 the plaintiff Burch Williams and the defendant John R. Bartlett, Jr. formed Barwil, Ltd., a limited partnership created under the laws of the state of Florida.   The purpose of the partnership was to provide a vehicle for real estate investment.   Bartlett became Barwil's general partner, while Williams became one of its limited partners.   Between 1970 and 1975 Barwil acquired real property located in both Florida and Connecticut.

In 1975, it became apparent that some of Barwil's partners were interested in further investment only in relation to Florida realty, while others

wished to pursue real estate investment opportunities solely in Connecticut. Accordingly, two new limited partnerships were formed under Florida law. The Florida real estate assets of Barwil were transferred to Suni Pines, Ltd., while the Connecticut real estate held by Barwil was to be conveyed to FWZ, Ltd.[1] (hereinafter FWZ).

Under the certificate of partnership of FWZ, the three general partners of FWZ were the defendant John R. Bartlett, Jr., Barwil, Ltd., and Barwil Corporation, a Florida corporation whose president is John R. Bartlett, Jr. The plaintiff Burch Williams, a limited partner in FWZ, contributed approximately $110,000 to FWZ.

On May 13, 1981, the plaintiffs, who include Burch Williams and other limited partners of FWZ, instituted the present action against John R. Bartlett, Jr., FWZ and the Farview Builders Corporation of Connecticut, a Florida corporation whose president is John R. Bartlett, Jr.[2] The complaint alleged, inter alia, that Bartlett (1) misrepresented the assets of FWZ and Barwil, Ltd. to his limited partners with the intent that they rely thereon; (2) conveyed real property in Connecticut

---

[1] Article 5 of the Certificate of Limited Partnership of FWZ states: "Contributions by General Partners—Barwil, Ltd. shall contribute to this partnership its interest in all of the real property located in the State of Connecticut in which Barwil, Ltd. has any interest, outright, as a partner in another partnership or otherwise and its interest in all other assets relating thereto, which said properties are generally referred to as Farview Farm 106-acre residential subdivision and Georgetown I, II and III 125-acre industrial property and 140-acre residential property. Said properties are being contributed subject to all mortgages, liens and encumbrances and all other liabilities relating to said properties. Barwil Corporation shall not make a contribution to this partnership."

[2] The complaint was subsequently withdrawn as to the defendant FWZ due to a defect in service. A motion to reinstate FWZ as a party is currently pending before the trial court.

rightfully belonging to FWZ to himself or entities which he controlled, including Farview Builders Corporation, for inadequate consideration; and (3) sold or mortgaged Connecticut real property rightfully belonging to FWZ without returning the proceeds to FWZ. The complaint described the affected real property as land known as Farview Farm and Georgetown I, II and III, located in the towns of Redding and Weston, Connecticut. In their prayer for relief, the plaintiffs seek, inter alia, (1) injunctive relief restraining the defendants from engaging in any transactions affecting title to the real property pending resolution of the action; (2) an injunction compelling conveyance to FWZ of the real property rightfully belonging to it; and (3) dissolution of FWZ, with winding up by the plaintiffs.

In conjunction with their complaint, the plaintiffs caused to be filed, on May 13, 1981, a notice of lis pendens on the land records where the disputed realty is located. The lis pendens describes three separate parcels of land, one of which is divided into multiple lots. Two of these parcels are held in the name of John R. Bartlett, Jr., with the exception of three lots, which are held in the name of Farview Builders Corporation. The remaining parcel is held in the name of Barwil, Ltd.

On June 1, 1981, the defendants Bartlett and Farview Builders Corporation applied for discharge of the notice of lis pendens.[3] Public Acts 1981, No. 81-8, § 2. Hearings on the defendants' application were held before the court, *Sullivan, J.,* on June 15 and 22, 1981. After hearing the relevant

[3] As the defendant Barwil, Ltd. did not apply to discharge the notice of lis pendens, the trial court considered the validity of the lis pendens only with respect to the real property held by John R. Bartlett, Jr. and Farview Builders Corporation, and our review is similarly so limited.

evidence, the court concluded that there was probable cause that the plaintiffs would prevail in their action, and therefore denied the defendants' application for discharge of the notice of lis pendens. From this judgment the defendants take the present appeal.

The defendants first contest the constitutional validity of the lis pendens statute, General Statutes § 52-325, as amended by Public Acts 1981, No. 81-8.[4]

⁴ Public Acts 1981, No. 81-8, entitled "An Act Concerning Notice of Lis Pendens," provides in pertinent part as follows:

"Section 1. (a) In any action in a court of this state or in a court of the United States (1) the plaintiff or his attorney, at the time the action is commenced or afterwards, or (2) a defendant, when he sets up an affirmative cause of action in his answer and demands substantive relief at the time the answer is filed, if the action is intended to affect real property, may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of lis pendens, containing the names of the parties, the nature and object of the action, the court to which it is returnable and the term, session or return day thereof, the date of the process and the description of the property. Such notice shall, from the time of the recording only, be notice to any person thereafter acquiring any interest in such property of the pendency of the action; and each person whose conveyance or encumbrance is subsequently executed or subsequently recorded or whose interest is thereafter obtained, by descent or otherwise, shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice, to the same extent as if he were made a party to the action. For the purpose of this section an action shall be deemed to be pending from the time of the recording of such notice; provided such notice shall be of no avail unless service of the process is completed within the time provided by law. This section shall be construed to apply to mechanics' liens and all other inchoate liens, certificates of which are recorded subsequent to the recording of the notice of the pendency of the action; and, in suits to foreclose mortgages or other liens, the persons whose conveyances or encumbrances are subsequently executed or subsequently recorded shall forfeit their rights thereunder, unless they apply to the court in which such action is brought to be made parties thereto, prior to the date when the judgment or decree in such action is rendered.

"(b) As used in this section, actions "intended to affect real property" means (1) actions whose object and purpose is to deter-

They argue that the act, which provides only for a post-filing hearing and does not contain a bonding provision or any other mechanism whereby the property owner may substitute security to obtain release of the lis pendens, in constitutionally infirm under principles of procedural due process. We disagree.

We note, first, that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers Local 473* v. *McElroy,* 367 U.S.

mine the title or rights of the parties in, to, under or over some particular real property; (2) actions whose object and purpose is to establish or enforce previously acquired interests in real property; (3) actions which may affect in any manner the title to or interest in real property, notwithstanding the main purpose of the action may be other than to affect the title of such real property. . . .

"Sec. 2. (a) Whenever a notice of lis pendens is recorded against any real property pursuant to subsection (a) of section 52-325, as amended by section 1 of this act, the property owner, if the action has not then been returned to court, may make application, together with a proposed order and summons, to the superior court for the judicial district to which the action is made returnable, or to any judge thereof, that a hearing or hearings be held to determine whether such notice of lis pendens should be discharged. The court or judge shall thereupon order reasonable notice of such application to be given to the plaintiff and shall set a date or dates for the hearing or hearings to be held thereon. If such plaintiff is not a resident of this state such notice shall be given by personal service, registered or certified mail, publication or such other method as the court or judge shall direct. At least seven days notice shall be given to the plaintiff prior to the date of such hearing. . . .

"Sec. 3. (a) Upon the hearing held on the application or motion set forth in section 2 of this act, the plaintiff shall first be required to establish that there is probable cause to sustain the validity of his claim. Any property owner entitled to notice under subsection (c) of section 52-325, as amended by section 1 of this act, may appeal and be heard on the issue.

"(b) Upon consideration of the facts before it, the court or judge may: (1) Deny the application or motion if probable cause to sustain the validity of the claim is established, or (2) order such notice of lis pendens discharged of record if probable cause to sustain the validity of the plaintiffs claim is not established."

886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961). Rather, it is a flexible doctrine, requiring "such procedural protections as the particular situation demands." *Morrissey* v. *Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). The United States Supreme Court, in *Mathews* v. *Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), created a three-part balancing test for determining what procedural safeguards are required by due process: (1) the private interests affected; (2) the risk of an erroneous deprivation of such interests by the present procedures, coupled with the probable value of additional or substitute safeguards; (3) the governmental interests, including the additional fiscal and administrative burdens which would be created by different procedural requirements. Id., 334–35; see *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 572–73, 409 A.2d 1020 (1979). Moreover, in the context of a challenged sequestration procedure, the court has characterized the test as whether the statutory scheme "effects a constitutional accommodation [between] the conflicting interests of the parties." *Mitchell* v. *W. T. Grant Co.,* 416 U.S. 600, 607, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974).

This court has previously considered the constitutional validity, under the fourteenth amendment to the federal constitution and article first, § 10 of the Connecticut constitution, of both a mechanics lien statute and the previous lis pendens statute. *Kukanskis* v. *Griffith,* 180 Conn. 501, 430 A.2d 21 (1980); *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975) (remanded to consider whether judgment based upon federal or state constitutional

grounds, or both), aff'd on remand, 170 Conn. 155, 365 A.2d 393 (decision based on both state and federal constitutional grounds), cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976) (adequate state ground). In both decisions, we held that the absence of statutory provisions providing the property owner with a hearing "at a meaningful time and in a meaningful manner" violated due process principles under both the federal and state constitutions. *Kukanskis* v. *Griffith*, supra, 510–11; *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.*, supra, 385.

Guided by these precedents, we turn to a consideration of whether the current lis pendens statute, with its provision for a post-filing hearing, comports with procedural due process.[5] In order to

[5] We are cognizant of the fact that several courts, when confronted with constitutional challenges to lis pendens statutes, have construed the procedure as an insufficient deprivation of property to warrant the protections of due process. E.g., *Batey* v. *Digirolamo*, 418 F. Sup. 695, 697 (D. Hawaii 1976); *Debral Realty, Inc.* v. *DiChiara*, 420 N.E.2d 343, 348 (Mass. 1981); *George* v. *Oakhurst Realty, Inc.*, 414 A.2d 471, 474 (R.I. 1980). We do not, however, subscribe to this construction. Concededly, the lis pendens procedure does not deprive a property owner of possession, use or enjoyment of the affected real estate. Nevertheless, the notice of lis pendens unquestionably interferes with an owner's right to sell or mortgage his realty and this, in our view, constitutes a sufficient deprivation so as to invoke the protections of procedural due process. *Kukanskis* v. *Griffith*, 180 Conn. 501, 509, 430 A.2d 21 (1980).

We are further cognizant of the "state action" requirement contained within the fourteenth amendment. The mere legislative authorization of the lis pendens procedure, as embodied within Public Acts 1981, No. 81-8, does not create sufficient state involvement to trigger fourteenth amendment due process protections. See *Flagg Bros., Inc.* v. *Brooks*, 436 U.S. 149, 164–66, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978). Pursuant to Public Acts 1981, No. 81-8, however, the notice of lis pendens must be filed with the clerk of the town in which the property is located, who in turn records the notice upon the land records. This participation by a public official in the deprivation of property rights creates sufficient state action to invoke the fourteenth amendment and article first, § 10, of the

determine what constitutes a hearing at a meaningful time and in a meaningful manner, we look first to the nature of the property interest affected. Certainly the deprivation caused by the notice of lis pendens is considerably less severe than a total deprivation of the property interest, where due process mandates a pre-seizure hearing. E.g., *Fuentes* v. *Shevin,* 407 U.S. 67, 96, 92 S. Ct. 1983, 32 L. Ed. 2d 556, reh. denied, 409 U.S. 902, 93 S. Ct. 177, 34 L. Ed. 2d 165 (1972) (seizure of household goods). Nor can the interest at stake in the present case be construed as a deprivation of property essential to meet the owner's basic needs. See *Goldberg* v. *Kelly,* 397 U.S. 254, 264, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) (termination of welfare benefits); *Sniadach* v. *Family Finance Corporation,* 395 U.S. 337, 341–42, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969) (garnishment of wages). The deprivation in *Fuentes, Goldberg* and *Sniadach* was blatant and total, thus requiring a pre-seizure hearing. The degree of deprivation under Public Acts 1981, No. 81-8, however, is at all times nonpossessory. Indeed, unless the property owner has any intention of alienating or mortgaging the realty, the effect of the lis pendens procedure is de minimis.

Turning to a consideration of the plaintiffs' interest in the procedure, we note that a notice of lis pendens ensures that the plaintiffs' claim cannot be defeated by a prejudgment transfer of the property. Because of the uniqueness of real estate, this

Connecticut constitution. See *North Georgia Finishing, Inc.* v. *Di-Chem Inc.,* 419 U.S. 601, 602–604, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1974). As the *Flagg Bros.* court noted, "[t]he constitutional protection attaches not because . . . a clerk issued a ministerial writ out of court, but because as a result of that writ the property . . . was seized . . . by the affirmative command of the [state] law . . . ." *Flagg Bros. Inc.* v. *Brooks,* supra, 161 n.10.

function is particularly important where the complaint seeks specific performance relative to the affected property. Even where the plaintiff seeks only recovery of funds allegedly invested in the burdened real estate, or where the plaintiff asserts a partial ownership interest therein, the lis pendens procedure provides security for payment of the claim pending final resolution of the case.

Moreover, the state possesses a legitimate interest in the challenged lis pendens procedure. In enacting Public Acts 1981, No. 81-8, the legislature created a specified procedure whereby the rights of third-party purchasers are readily defined. "The doctrine underlying lis pendens is that a person who deals with property while it is in litigation does so at his peril . . . ." (Citations omitted.) *Kunkanskis* v. *Griffith,* supra, 507. Further, "[i]f the power of the courts to determine the rights of the parties to real property could be defeated by its transfer, *pendente lite,* to a purchaser without notice, additional litigation would be spawned and the public's confidence in the judicial process could be undermined." *Chrysler Corporation* v. *Fedders Corporation,* 670 F.2d 1316, 1329 (3d Cir. 1982).

In view of the limited effect caused by the filing of the notice of lis pendens upon the property of the record owner, when balanced against the interests of the state and the party utilizing the lis pendens procedure, we are unable to conclude that Public Acts 1981, No. 81-8 fails to comport with the requirements of due process. The prompt post-filing hearing afforded under the statute eliminates the risk of an erroneous deprivation of property interests. We therefore hold that General Statutes § 52-325, as amended by Public Acts 1981, No. 81-8, meets the minimum requirements of procedural due

process under the fourteenth amendment and article first, § 10 of the Connecticut constitution.[6]

The defendants next attack the scope of the legal standard employed by the trial court in determining the propriety of the notice of lis pendens. They assert that the conclusion of the trial court, "that there was probable cause that the plaintiff will prevail in this action," was not sufficient to demonstrate probable success in an action intended to affect real property. We disagree.

Utilization of the lis pendens procedure is, of course, restricted to those actions intended to affect real property. Public Acts 1981, No. 81-8, § 1 (a). As employed within the statute, actions intended to affect real property means, inter alia, "actions which may affect in any manner the title to or interest in real property, notwithstanding the main purpose of the action may be other than to affect the title of such real property." Public Acts 1981, No. 81-8 § 1 (b) (3). At the probable cause hearing, the plaintiffs produced the following uncontroverted evidence. The defendant Bartlett, individually and in his capacity as general partner of Barwil, Ltd. and president of Barwil Corporation, signed the certificate of limited partnership of FWZ. Article 5 thereof recites that Barwil, Ltd. will contribute its Connecticut realty, the description of which corresponds to the property presently

---

[6] Because Public Acts 1981, No. 81-8, provides a property owner with a hearing "at a meaningful time and in a meaningful manner"; *Kukanskis* v. *Griffith*, 180 Conn. 501, 509–10, 430 A.2d 21 (1980); we do not construe the absence of a bonding provision as rendering the statute constitutionally infirm. Indeed, because of the uniqueness of real property, substituting security to obtain the release of a lis pendens might impair the adequacy of the remedy for the successful litigant. See *Robert Lawrence Associates, Inc.* v. *Del Vecchio*, 178 Conn. 1, 18–19, 420 A.2d 1142 (1979).

burdened by the notice of lis pendens, to FWZ. See footnote 1, supra. Relying on this representation, the plaintiffs invested approximately $110,000 in FWZ. On June 9, 1980, Bartlett wrote the Barwil limited partners, informing them that the Connecticut real property of Barwil, Ltd. was transferred to FWZ.[7] None of the subject properties was transferred to FWZ, although between 1976 and 1980 the defendant Bartlett made approximately 126 title transactions involving the realty subject to the lis pendens, including transfers to himself or to entities which he controlled.

Thus there was sufficient evidence presented at the hearing justifying a finding of probable cause to the effect that the defendant Bartlett misappropriated partnership property while occupying a position which equity recognizes as that of a fiduciary.[8] Such misappropriation constitutes fraud as a matter of law. *Maruca* v. *Phillips,* 139 Conn. 79, 81, 90 A.2d 159 (1952). These factors satisfy the requirements relative to the imposition of a constructive trust.[9] See *Zack* v. *Guzauskas,* 171

[7] The June, 1980 memorandum to Barwil's partners regarding the partnership's general equity and signed by the defendant Bartlett reads in pertinent part as follows: "You will recall that as of September 1, 1975, all properties were transferred to new partnerships to provide funds for carrying and other purposes. . . . The Connecticut properties were transferred to FWZ, Ltd., a Florida limited partnership, again with Barwil, Ltd. as general partner."

[8] The defendant Bartlett, as the general partner of both Barwil, Ltd. and FWZ, occupied a fiduciary position with respect to the plaintiffs, whom he owed "the duty of rendering true accounts and full information about everything which affects the partnership." *Weidlich* v. *Weidlich,* 147 Conn. 160, 164, 157 A.2d 910 (1960); see *C & S Research Corporation* v. *Holton Co.,* 36 Conn. Sup. 619, 622, 422 A.2d 331 (1980); 60 Am. Jur. 2d, Partnership § 123.

[9] Although the defendants seek to utilize the statute of frauds as a bar to any claim of relief that might affect real property, we note that the statute is not applicable to trusts arising by operation of law. *Hieble* v. *Hieble,* 164 Conn. 56, 59, 316 A.2d 777 (1972).

Conn. 98, 103–105, 368 A.2d 193 (1976); *Harper* v. *Adametz*, 142 Conn. 218, 225, 113 A.2d 136 (1955). We conclude that there was a sufficient showing of probable cause to justify the imposition of equitable relief, as sought in the complaint, affecting the title to or interests in the burdened real estate.[10]

Similarly, we are not persuaded by the defendants' final claim that there was insufficient evidence from which the trial court could find probable cause that the plaintiffs would prevail in their action. A probable cause hearing is not intended to be a trial on the merits, nor does it require the plaintiffs to establish their claims by a preponderance of the evidence. *McCahill* v. *Town & Country Associates, Ltd.,* 185 Conn. 37, 39, 440 A.2d 801 (1981). "The task of the trial court is essentially one of weighing probabilities; that task requires the exercise of broad discretion. The court, in making its determination of probable cause, does so on the basis of the facts before it." Id.

As previously stated, the plaintiffs presented uncontroverted evidence that the defendant Bartlett fraudulently misappropriated real property rightfully belonging to FWZ. The sole witness at the probable cause hearing was the plaintiff

With respect to the defendants' claim that the statute of limitations bars the action, the letter from the defendant Bartlett to the partners of Barwil, Ltd.; see footnote 7, supra; could possibly be construed as a promise to convey the property, thus removing the bar created by the statute of limitations. See *Whitehouse* v. *Sammis,* 178 Conn. 529, 533, 423 A.2d 163 (1979). Further, "[c]ourts, applying equitable principles, have laid down the doctrine of equitable estoppel by which a defendant may be estopped by his conduct from asserting defenses such as the statute of limitations." *Morris* v. *Costa,* 174 Conn. 592, 599, 392 A.2d 468 (1978).

[10] The further claim of the defendants that Public Acts 1981, No. 81-8 does not apply to real property held as "inventory" lacks merit. The statute makes no such distinction.

Williams, whom the trial court specifically found to be honest and candid. Moreover, the plaintiffs introduced over seventy-five exhibits showing title transactions made by the defendants with respect to the affected real estate. Although it was the plaintiffs' burden to establish probable cause as to the validity of their claim; Public Acts 1981, No. 81-8 § 3; the defendants did not produce any evidence to rebut the plaintiffs' contentions. Under these circumstances, we conclude that the trial court could reasonably have found as it did.

There is no error.

In this opinion the other judges concurred.