[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This declaratory judgment action was commenced, pursuant to General Statutes 38a-453, by Richard J. Diviney,[1] the administrator of the estate of Christopher M. Nadler, now deceased. The defendants in the action are Weston Holding Group, Inc.,[2] Security Equity Life Insurance Company ("Security") and Whitney K. Smith. Weston Holding Group, Inc. is a corporation of which the deceased was a principal; it is the owner of an insurance policy in the face amount of one million ($1,000,000) dollars in which the deceased is the named insured. Security is the insurance company which issued said policy. Ms. Smith is the named beneficiary of the policy.
Plaintiff alleges that in late March, 1991, approximately three and one-half months before his death, Mr. Nadler changed the beneficiary of the policy from his estate to defendant Smith with the intent to defraud his creditors within the meaning of
General statutes 38a-453.[3]
The plaintiff seeks to have the proceeds of the life insurance policy made payable to him as administrator of Mr. Nadler's estate to be disbursed in accordance with the statute.
In its answer, counterclaim and cross-claim, Security acknowledges that when the life insurance policy was issued on or about October 31, 1987, the beneficiary on said policy was the estate of the deceased. Mr. Nadler, however, reserved the right to designate a new beneficiary, which right he purportedly exercised on or about May 3, 1991 when a certificate of beneficiary designation was filed with Security naming defendant Smith as beneficiary of the policy. Since both the estate of Mr. Nadler and Ms. Smith make claim to the proceeds of the policy, Security seeks an interlocutory judgment requiring the plaintiff and the defendant Smith to interplead and discharging Security from any further liability with regard to such proceeds. It also seeks reasonable counsel fees and costs.
Defendant Smith now moves to strike plaintiff's complaint in its entirety on the ground that it fails to allege sufficient and adequate facts to constitute or support a cause of action as required by General Statutes 52-91 for two reasons: (1) that General Statutes 38a-453 is null and void "as it fails to provide adequate safeguards against a wrongful deprivation of defendant's right to collect and enjoy insurance proceeds without regard to due process of law, and is therefore violative of the CT Page 1199 Connecticut and United States' Constitutions". and (2) that plaintiff has not plead facts to support his general allegation of fraud and fraudulent intent. The parties have submitted memoranda of law in support of their positions.
A motion to strike tests the legal sufficiency of allegations of a complaint to state a claim upon which relief can be granted. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989); Gordon v. Bridgeport Housing Authority, 208 Conn. 161,170, 544 A.2d 1185 (1988). "For the purpose of ruling upon a motion to strike, the facts alleged in the complaint, though not the legal conclusions it may contain, are deemed to be admitted." Maloney v. Conroy, 208 Conn. 392, 394, 545 A.2d 1059
(1988). Ferryman, supra. The facts alleged must be construed in the manner most favorable to the nonmoving party. Rowe v. Godou,209 Conn. 273, 278, 550 A.2d 1073 (1988).
The grounds upon which defendant Smith moves to strike the complaint are insufficient pleading of facts of fraud, and the unconstitutionality of General Statutes 38a-453.[4]
They will be discussed separately.
A. Insufficient Pleading of Fraud
A complaint "shall contain a statement of the facts constituting the cause of action. . . ." General Statutes 52-91. "Acts . . . may be stated according to their legal effect, but in so doing the pleading should be such as fairly to apprise the adverse party of the state of facts which it is intended to prove." Practice Book 109. See Mazziotti v. DiMartino,103 Conn. 491, 496, 130 A. 844 (1925). The complaint must fail if it contains only unsupported conclusions of law without the required facts. Cavallo v. Derby Savings Bank, 188 Conn. 281, 285,449 A.2d 986 (1982).
General Statutes section 38a-453, upon which plaintiff's cause of action rests, states that a beneficiary "shall be entitled to the proceeds of the policy as against the representatives or creditors of the insured, unless . . . the designation of a beneficiary was made with intent, express or implied, to defraud creditors." General Statutes 38a-453(a) (emphasis added). Connecticut law has yet to define said "intent to defraud" in the context of this statute. However the law of fraudulent conveyances provides such a definition and is appropriate for reference.
In Connecticut a common law remedy exists for fraudulent conveyance, Molitor v. Molitor, 184 Conn. 530, 535, 440 A.2d 215
(1981), as well as the statutory remedy provided by General CT Page 1200 Statutes 52-552, which adopted the common law and codified provisions of the statute of frauds. Id. Under both the common law and the statute, "[a] conveyance is Fraudulent if made with actual intent to avoid any debt or duty or is made without any substantial consideration by a person who is or will be thereby rendered insolvent." Id., 536. The latter is constructive fraud. See Id. The "express intent to defraud creditors" set forth in General Statutes 38a-453 corresponds to "actual" fraud, and the "implied intent to defraud creditors" set forth in 38a-453
corresponds to "constructive" fraud.
Plaintiff in paragraph "7" of his complaint alleges fraud as follows: "This change of designation of beneficiary was made by Christopher M. Nadler with the intent to defraud creditors. within the meaning of Conn. Gen. Stat. 38a-453 and this action is brought pursuant to Conn. Gen. Stat. 38a-453." This conclusory allegation is insufficient to meet the requirements of factual pleading as set forth above. Further, acts constituting fraud must be pleaded with some degree of specificity: "the mere allegation that a fraud has been perpetrated is insufficient, the specific acts relied upon must be set forth. . . ." Maruca v. Phillips, 139 Conn. 79, 81 90 A.2d 159
(1952). For these reasons, plaintiff's complaint should be stricken for failure to set forth a cause of action.
B. Violation of Federal and State Constitutions
Defendant Smith's second objection to the complaint is that it is based on a null and void statute and, therefore, fails to state a cause of action. Defendant alleges that General Statutes38a-453 violates the due process clauses of thefourteenth amendment to the United States constitution[5] and article first, section ten of the Connecticut constitution[6] because it effects an attachment without notice and a hearing.[7]
Plaintiff argues that thereto can be no due process violation both because defendant Smith has no constitutionally protected property interest and because there is no state action involved.
The due process clauses of the United States constitution and the Connecticut constitution contain the same prohibition and are given the same effect. Barde v. Board of Trustees, 207 Conn. 59,64, 539 A.2d 1000 (1988). Thus, decisions of the United States Supreme Court "guide and must control our decision." Roundhouse Construction Corp. v. Telesco Masons Supplies Co.,168 Conn. 371, 374, 362 A.2d 778, vacated, 423 U.S. 809, 96 S.Ct. 20,46 L.Ed.2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976).
The constitutionality of statutes exempting insurance proceeds from claims of creditors has been challenged under the CT Page 1201 contracts clause of the United States constitution.[8] No cases on point have been found, however, with respect to a challenge based on the due process clause, and the parties have provided none to the court.
Plaintiff disputes that defendant Smith has a property interest that is cognizable under the due process clause. Whether a party has such a property interest is a matter of state law. See Cleveland Board of Education v. Lodermill, 470 U.S. 532,105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985): Mitchell v. W.T. Grant Co., 416 U.S. 600, 604, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701,33 L.Ed.2d 548 (1972). In Connecticut a beneficiary's interest in life insurance proceeds is "more than a mere expectancy." Allen v. Home National Bank, 120 Conn. 306, 310,180 A. 498 (1935). "Where no right to change [the beneficiary] is reserved in the [insurance] policy, the rights of the named beneficiary cannot be impaired by the assured and the company without [the beneficiary's] assent; where . . . the right to change is reserved to the assured, the interest of the beneficiary is yet deemed to be vested, although qualified in that it is subject to be defeated by an exercise of the right reserved." Id., 310-11 (citations omitted). "So long as the power of defeasance is not exercised, [beneficiaries] stand in the position of one having title which the law will recognize, and for the protection of which they are entitled to the usual legal and equitable remedies. Barbin v. Moore, 85 N.H. 362, 368,159 A. 409, 83 A.L.R. 69." Allen v. Home National Bank, supra at 311. Any right to the insurance proceeds by the insured's estate or creditors rests upon a showing of fraud, not upon any equitable right in the proceeds. Id., 312. Upon the insured's death, the rights of a beneficiary become vested and absolute. Appleman, 2 Insurance Law and Practice 921 (1966); Bartlett v. Bartlett, 220 Conn. 372, 379, A.2d (1991) (right of inheritance vests at moment of decedent's death): Blodgett v. Bridgeport City Trust Co., 115 Conn. 127, 144, 161 A. 83 (1932) (date of death is time when right of beneficiary becomes fixed). Further, even a temporary or partial impairment to a property right suffices to merit protection under the fourteenth amendment. Connecticut v. Doehr, ___ U.S. ___, 111 S.Ct. 2105, 2113,115 L.Ed.2d 1 (1991). Defendant Smith has a constitutionally protected property interest in the insurance proceeds.
"Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as `state action'." Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 924, 102 S.Ct. 2744, 2747 73 L.Ed.2d 482
(1982). Thus, the next step in the analysis is an inquiry into whether or not the state action triggering the deprivation here is sufficient to invoke the protections of the fourteenth CT Page 1202 amendment. Id.; see Jackson v. Metropolitan Edison Co.,419 U.S. 345, 349, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Justice white states in particular, supra:
 Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State. These cases reflect a two-part approach to this question of `fair attribution.' First, the deprivation must he caused by the exercise of some right or privilege created by the State or be a rule of conduct imposed by the state or by a person for whom the state is responsible. In Sniadach v. Family Finance Corp., 395 U.S. 37, 89 S.Ct. 1820, 23 L.Ed.2d 349
(1969], Fuentes [v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)], W.T. Grant [Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974)], and North Georgia [Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751
(1975)], for example, a state statute provided the right to garnish or to obtain prejudgment attachment, as well as the procedure by which the rights could be exercised. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.
Lugar, 102 S.Ct. at 2753-54.
There is no question that the alleged deprivation herein is "caused by the exercise of some right or privilege created by the State." See Id. The Connecticut legislature enacted General Statutes 38a-453, which gives an executor or administrator of the insured's estate a better right to the insurance proceeds CT Page 1203 under certain circumstances and arguably effects an attachment of those proceeds upon presentation of a claim to the insurance company. See Lugar, supra. North Georgia Finishing, supra: Mitchell, supra; Sniadach. supra; Fuentes, supra. See also Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729,1738, 56 L.Ed.2d 185 (1978) (a State may act through its legislative, executive or judicial authorities).
However, the second part of the test, that the plaintiff in this case be "a state actor" has not been met. The Supreme Court addressed the state actor component of state action in Flagg Brothers, supra. In that case, a provision of the New York Uniform Commercial Code was challenged under the due process and equal protection clauses of the fourteenth amendment. Id., 1732. The statute permits a self-help sale by a warehouseman of goods stored by him pursuant to a lien on the goods without a prior hearing. N.Y.U.C.C. 7-210 (McKinney 1964). The Court held that the sale was not properly attributable to the state of New York and thus was not "state action" as required by the fourteenth amendment. In reaching that conclusion, the Court noted that there was "a total absence of overt official involvement" as in the Fuentes line of cases. Flagg, supra, 1734. It further determined that New York had not delegated to the warehouseman a function that was traditionally exclusively reserved to the state (the so-called "public function doctrine"). Id., 1734-37. Finally, the Court rejected the debtors' argument that the state had authorized and encouraged the private action, responding that "[t]his Court . . . has never held that a State's mere acquiescence in a private action converts that action into that of the State." Id., 1737-38. It continued: "[T]he State of New York is in no way responsible for [the warehouseman's] decision, a decision which the State in section 7-210 permits but does not compel, to threaten to sell these respondents' belongings." Id., 1738. Cf. Peterson v. City of Greenville, 373 U.S. 244, 83 S.Ct. 1119,1121, 10 L.Ed.2d 323 (1963) (state action found to exist where city ordinance mandated segregation and ordinance was enforced through state's criminal processes); Robinson v. State of Florida, 378 U.S. 153, 84 S.Ct. 1693, 1695, 12 L.Ed.2d 771 (1964) (trespass convictions for violations of restaurant segregation, mandated by state regulations, held to reflect state policy and thus violate fourteenth amendment).
The reasoning in Flagg was reiterated in Tulsa Professional Collection Services v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 1345.99 L.Ed.2d 565 (1988), where the Court stated that "[p]rivate use of state-sanctioned private remedies or procedures does not rise to the level of state action." Id., 485. State action may be found, however, if state officials give the private party "overt, significant assistance" in using the state proceedings. Id., 486. CT Page 1204 Based on the reasoning in Lugar, supra, and Flagg Brothers, supra, the plaintiff herein is not a "state actor", and, thus, the requisite state action for purposes of thefourteenth amendment is missing.
Defendant Smith's reliance on Pinsky v. Duncan, 898 F.2d 852
(2d Cir. 1990), aff'd sub. nom., Connecticut v. Doehr, U.S. ___,111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), is inapposite, since in Pinsky there was overt official participation in the attachment. See Connecticut v. Doehr, supra, 2112. See also Williams v. Bartlett, 189 Conn. 471, 457 A.2d 290 (1983) in which the Connecticut Supreme Court upheld the state's statutory lis pendens procedure under a procedural due process challenge. In discussing whether the requisite state action was present, the Court stated:
 We are . . . cognizant of the "state action" requirement contained within the fourteenth amendment. The mere legislative authorization of the lis pendens procedure, as embodied within Public Acts 1981, No. 81-8, does not create sufficient state involvement to trigger fourteenth amendment due process protections [citing Flagg].
Id., 478-79 n. 5. The court in Williams did find, however, that the action by the town clerk in recording the notice of lis pendens on the land records was participation by a public official in the deprivation of property rights, and concluded that this public participation was sufficient state action. Id. Here none of the attributes of state involvement discussed in the cases above is present. Consequently, no state action has occurred, and defendant's motion to strike the complaint on the grounds of due process violations is denied.
Further, "legislative enactments carry with them a strong presumption of constitutionality", Zapata v. Burns. 207 Conn. 496,508, 542 A.2d 700 (1988); and "courts will assume that the legislature intended to accomplish a reasonable and rational result", Stoni v. Wasicki, 179 Conn. 372, 376-77, 426 A.2d 774
(1979). As was stated by the Supreme Court in State v. Muolo,119 Conn. 323, 176 A. 401 (1935): "We cannot impute to the Legislature an intent to pass an unconstitutional statute and a law should be construed, if it can reasonably be done, so as to make it valid." Id., 330. Thus, "where a statute reasonably admits of two constructions, one valid and the other invalid on the ground of unconstitutionality, courts should adopt the construction which will uphold the statute even though that construction may not be the most obvious one." Adams v. I CT Page 1205 Rubinow, 157 Conn. 150, 152, 251 A.2d 49 (1968). See also United States v. Lovett, 328 U.S. 303, 329, 66 S.Ct. 1073, 90 L.Ed. 1252
(1946) (Frankfurter, J., concurring): Blodgett v. Holden,275 U.S. 142, 147-48, 48 S.Ct. 105, 72 L.Ed. 206, mod. on other grounds, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206 (1927): Peck v. Jacquemin, 196 Conn. 53, 64-65, 491 A.2d 1043 (1985) Therefore, even if state action were found, a procedural due process challenge to General Statutes 38a-453, on the grounds that it does not provide for notice and a hearing, would have to fail were the statute interpreted in such a way as to meet the notice and hearing requisites.
According to Conn. Gen. Stats. 38a-453c, when the insurance company receive written notice that the policy was procured or premiums were paid thereon with intent to defraud creditors, it cannot pay out the proceeds and be free of liability for three months thereafter. If within these three months, "proper legal proceedings" to enforce the claim are not commenced, the insurance company may disregard the notice. Depending on what "proper legal proceedings" means, the requirements of due process might be met. To divert for a moment, it is essential to understand what due process entails: "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18
(1976). "The requirements of due process of law are not technical, nor is any particular form of procedure necessary." Mitchell, supra, 610. The circumstances of each case dictate the requirements; Rivera-Lopez v. Gonzalez-Chapel, 430 F. Sup. 704,712 (D.Puerto Rico 1975), citing Cafeteria Workers v. McElroy,367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 91961), "[t]he integrity of the factfinding process and basic fairness are principal considerations;" Boykins v. Fairfield Board of Education, 492 F.2d 697, 701 (5th Cir. 1974), cert. denied,420 U.S. 962 (1975). The "proper legal proceedings" which must be commenced by the claimant within three months of giving notice to the insurance company; General Statutes 38a-453 (c); provides such an opportunity to be heard if that clause is construed as requiring the claimant to commence an action in the nature of interpleader pursuant to General Statutes52-484.[9]
"The basis for an action of interpleader is the existence of conflicting claims to property in the hands of a stakeholder." Commercial discount v. Plainfield, 120 Conn. 274,278-79, 180 A. 311 (1935). Its primary purpose is to shield the stakeholder, usually a neutral party, from double liability. Indianapolis Colts v. Mayor of Baltimore, 733 F.2d 484, 486 (7th Cir. 1984), cert. denied, 470 U.S. 1052, 105 S.Ct. 1753,84 L.Ed.2d 817, 7 Wright, Miller Kane, Federal Practice and CT Page 1206 Procedure: Civil 2d 1702 (1986). One cannot require the parties to interplead, however, until the court has had the opportunity to review the distinct claims to determine if interpleader is appropriate. 7 Wright, Miller Kane, Federal Practice and Procedure: Civil 2d 1714. This determination is made "only after all parties have been given notice and an opportunity to be heard on the question." Id. The general rule is stated in our Practice Book sections 538 and 539 which require that "[t]he complaint in an interpleader action shall allege only such facts as show that there are adverse claims to the fund or property:" 538; and that "[n]o trial on the merits of an interpleader action shall be had until (1) an interlocutory judgment of interpleader shall have been entered; and (2) all defendants shall have filed statements of claim, been defaulted or filed waivers. . . ."; 539. When the court determines that interpleader is appropriate, it then Proceeds to a trial on the merits. Id.
The notice and hearing before the court that precedes an interlocutory judgment of interpleader would suffice to protect the property interests of the claimants herein. The court is cognizant of the rights of creditors in this State, see, e.g., D'Addario v. Abbott, 128 Conn. 506, 509, 24 A.2d 245 (1941); and recognizes that General Statutes 38a-453 was intended as an exemption statute to protect beneficiaries from the claims of creditors; Pearl v. Goldberg, 300 F.2d 610, 613 (2d Cir. 1962): and as such should be liberally construed; 5 Couch, Insurance 2d 29:118 (1984). An interpleader action is the "proper legal proceeding" when several claimants assert rights to the same fund or property, and serves to protect the diverse interests of all parties. Thus, reading General Statutes 38a-453 as requiring the commencement of an interpleader action within three months of notification of a claim "effects a constitutional accommodation [between] the conflicting interests of the parties." Mitchell. supra, 607.
In conclusion, defendant Smith's motion to strike plaintiff's complaint should be granted on the ground that the pleading fails to sufficiently plead Fraud, and should be denied on the ground that it violates her rights to procedural due process of law.
KATZ, J.