[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONRE DISCHARGE OF LIS PENDENS
FACTS
Before the court is Spy Glass Hollow Acquisition Corporation's[1] ("Spy Glass") application to discharge two notices of lis pendens that were filed in the Town of Groton's land records against two condominium development projects. The notices of lis pendens were submitted, and later recorded, by the two defendants, Galen Kilburn and Robert C. Young. The lis pendens were filed as a result of a suit brought in New London Superior Court in which the defendants, through a partnership, seek to avoid certificates of strict foreclosure on the two subject properties. (See Application for Discharge of Lis Pendens, Schedules A B). CT Page 7020
After a probable cause hearing on May 22, 1995, the court finds the follows relevant facts.
Robert Young and Galen Kilburn are in the business of buying, managing, and disposing of distressed real estate loans through a Georgia Corporation, Kilburn-Young Asset Management Corporation.
At some point, Young and Kilburn formed a Connecticut Corporation named Connecticut Properties, Inc. ("CPI") in order to acquire distressed properties in Connecticut. CPI later bid and purchased non-performing notes and mortgages on two condominium projects in the Town of Groton that were held by the Resolution Trust Corporations ("RTC"). The mortgages and notes were non-performing at the time of CPI's purchase, and CPI eventually began foreclosure proceedings to take title to the properties.
In an effort to attract investors for the condominium projects, a limited partnership was formed with the name of Groton Acquisition Limited Partnership ("GALP"). Dutch investors, through another limited partnership WHS, LP[2] ("WHS") had an 80% interest in GALP. Both Kilburn and Young had a 15% and 5% respective interest in GALP. CPI was GALP's general partner, and it subsequently transferred its interest in the notes and mortgages to GALP. The asset that GALP had was the right to foreclosure on the non-performing mortgages and notes of the condominium projects. This right remained in effect as long as GALP was able to continue to make payments on its obligations to the RTC.
Because of some unspecified problems in the condominium projects, GALP was unable to make payments on its obligation to the RTC. As a result, CPI, acting as the general partner of GALP, negotiated with the RTC for a discounted pay-off of its debt. In order to live up to the agreement, GALP needed to make a capital call to all of its limited partners in order to prevent the RTC from foreclosing on the notes and mortgages that secured CPI/GALP's original acquisition of the properties.[3]
Thereafter, GALP made a capital call to its limited partners, and WHS refused to make a contribution. The partnership agreement of GALP does not require that the limited partners answer any additional capital calls. (See Spy Glass exhibit 2, Article III). During this same time, a dispute arose as to the management of GALP, and WHS allegedly put CPI out as general partner, and CT Page 7021 assumed the role.
Lacking new capital, the deal that CPI had worked out with the RTC fell through. At the probable cause hearing held on May 22, 1995, the parties stipulated that Spy Glass later purchased the RTC's position, which was senior to GALP's interest, regarding the initial CPI assignment. In effect, Spy Glass purchased the RTC's prior right to foreclosure on the notes and mortgages if GALP could not meet its obligations. The notes securing GALP's interest in the properties were retained by the RTC in full satisfaction of GALP's debt. Eventually, the interest that GALP had in the properties was extinguished, and the underlying properties were foreclosed. In effect, Spy Glass now owns the property outright.
The defendant's basic claim is that WHS breached its fiduciary duty owed to its other limited partners by refusing to participate in a capital call which later allowed, Mr. A. Slokker, through different entities under his control, to acquire the project. Spy Glass claims that there was nothing underhanded or fraudulent in any of the conveyances because the GALP partnership agreement did not require that a capital call be answered. Spy Glass further claims that there was nothing fraudulent or underhanded in its subsequent foreclosures, and that Spy Glass took the property in accordance with its purchased rights when it bought the RTC's prior interest in GALP's notes and mortgages.
DISCUSSION
General Statutes § 52-325(a) permits a plaintiff in any action intended to affect real property to record on the appropriate land records a notice of lis pendens. The notice operates from the time of its recording as notice to any person thereafter acquiring any interest in the property of the pendency of the plaintiff's action. Id. The notice also establishes the priority of the plaintiff's claim over those of subsequent purchasers. Id.
"As used in [section 52-325(a)], actions `intended to affect real property' means (1) actions whose object and purpose is to determine the title or rights of the parties in, to, under or over some particular real property; (2) actions whose object and purpose is to establish or enforce previously acquired interests in real property; (3) actions which may affect in any manner the CT Page 7022 title to or interest in real property, notwithstanding the main purpose of the action may be other than to affect the title of such real property." General Statutes § 52-325(b).
General Statutes 52-325a permits the defendant to move to discharge the notice of lis pendens. At the hearing on the defendant's motion to discharge, the plaintiff must "establish that there is probable cause to sustain the validity of his claim. . . ." General Statutes § 52-325b(a).
"A probable cause hearing is not intended to be a trial on the merits, nor does it require the plaintiffs to establish their claims by a preponderance of the evidence. The task of the trial court is essentially one of weighing probabilities; that task requires the exercise of broad discretion. The court, in making its determination of probable cause, does so on the basis of the facts before it." McCahill v. Town Country Associates, Ltd.,185 Conn. 37, 39, 440 A.2d 801 (1981). See also, Williamsv. Bartlett, 189 Conn. 471, 483 457 A.2d 290 (1983).
Based on the testimony and evidence presented at the hearing, the court finds that there is probable cause to support the maintenance of the lis pendens on these condominium projects. Although WHS had no obligation to answer a capital call and had the ability to engage in other business activities under the terms of GALP's partnership agreement, WHS still had a fiduciary obligation to be above board and open to GALP's other partners.
Our Supreme Court has noted that:
 In general, partners act as trustees toward each other and toward the partnership. Moreover, the general partner of a limited partnership has the fiduciary duty of rendering true accounts and full information about anything which affects the partnership. . . . We have stated that a fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. CT Page 7023
. . .
 The fiduciary must act honestly, and with the finest and undivided loyalty to the trust, not merely with that standard of honor required of men dealing with arm's length and the workaday world, but with a punctilio of honor the most sensitive.
(Citations omitted; internal quotation marks omitted.)
Konover Development Corp. v. Zeller, 228 Conn. 206, 216, 218-20,635 A.2d 789 (1994).
In effect, the court finds that there is probable cause to believe that WHS's refusal to answer GALP's capital call was made in bad faith so that it could later, through another entity controlled by the same individual, A. Slokker, foreclosure on the notes and ultimately take title and possession of the projects.
There is also probable cause to support the claim that there was a fraudulent transfer of GALP's assets, the notes and mortgages on the projects, once the capital call was refused. WHS's refusal to answer GALP's capital resulted in GALP's default on the obligations to the RTC. Because Spy Glass had previously purchased the prior position of the RTC, it then was able to ultimately gain control of the entire project.
CONCLUSION
For the above stated reasons, Spy Glass's motion to discharge the notice of lis pendens is hereby denied. The court finds that there is probable cause to believe that WHS breached its fiduciary duty to GALP and that GALP's assets were fraudulently conveyed to Spy Glass as a result.
Hurley, J.